## VROMAN vs. DEWEY.

*Boundary line.*—*Error in refusing instruction.*

1. In determining the boundary line between the quarters of a section, the quarter-post established by the government surveyors, if its location can be ascertained, must govern.
2. A judgment reversed for the refusal of an instruction which, if not literally accurate, was correct as applied to the evidence given and the question raised in the case.

APPEAL from the Circuit Court for *Dodge* County.

Ejectment. The case turned on the question of the true boundary line between the north-east and the north-west quarters of a certain section. The facts are sufficiently stated in the opinion of the court.

*D. W. Small*, for appellant, cited 7 Porter (Ala.) 428; 16 Ga. 141; 17 Miss. 459; 6 Gill, 121; 16 Pa. St. 232; 21 Ala. 66; 4 Hawks (N. C.) 64; 4 Mon. 63; 1 Dev. & Bat. 425; 1 S. & M. 428.

*E. Hurlbut*, for respondent, cited 6 Wis. 14; 19 id. 429; 3 How. (U. S.) 650.

DIXON, C. J. This is a controversy between the plaintiff and defendant, who are adjoining land owners, as to the boundary line between them; and the question turns upon the true location of the quarter-post established by the government surveyors. The quarter-post, being a fixed monument

on the land, must, if its true place can be ascertained, determine the dispute as to the boundary line. On this point there was a decided conflict of testimony, the plaintiff's witnesses locating the quarter-post in one place, and the witnesses for the defendant in another. In this state of case, the defendant's counsel requested the court, among others, to give the jury the following instruction: "In determining the line between the lands of the parties to this action, you are to be governed by the original government survey, and not by any subsequent survey, which may have been conducted without finding the location of all the original government landmarks; the quarter-post is an original government landmark." The court refused to give the instruction, and this, we think, was error. It is true that the instruction is not very accurately drawn, and we have had some difficulty as to the application of the word *all*, in the phrase "all the original government landmarks." But as it appears from the record that there was no dispute as to the location of any other government landmark than the quarter-post in question, we think the language of the instruction must be construed with reference to the facts of the case made before the jury; and, being so construed, it must be understood as applying to that quarter-post, and not to any other. We think the jury must have so understood and applied it. With this understanding of the instruction, it was equivalent to a request to charge that the jury must be governed by the original government survey, and not by any subsequent survey which may have been made without finding the quarter-post in question—a proposition which seems certainly correct, and clearly applicable to the facts of the case presented.

That such was the meaning of the instruction, is furthermore shown by the fact that evidence had been given by the plaintiff of a subsequent survey, in which the quarter-post in dispute was not found. It was to this evidence, undoubtedly, that the instruction was directed, and it cannot be supposed to

have had reference to any other government landmark in the line of survey. To refuse the instruction, therefore, was to refuse to submit to the consideration of the jury the most material question of fact involved in the case, and that upon which the rights of the parties must ultimately be determined.

*By the Court.*—Judgment reversed, and a new trial awarded.