[Civ. No. 3588.  Second Appellate District, Division One.—June 29, 1921.]

JOHN WAGNER et al., Appellants, v. CITY OF INGLE-WOOD (a Municipal Corporation), et al., Respondents.

[1] MUNICIPAL CORPORATIONS — ANNEXATION OF TERRITORY — SUFFICIENCY OF DESCRIPTION.—If the description of the district proposed to be annexed to the municipality, as contained in the resolution of the board of trustees, is sufficiently definite to answer for a private grant or conveyance, it is sufficient for annexation purposes.

[2] ID.—EVIDENCE—SURVEYS OF PUBLIC LANDS—INCLUSION OF PRIVATE PROPERTY—JUDICIAL NOTICE.—Under section 1875 of the Code of Civil Procedure, the courts will take judicial notice of government surveys of public lands as public and official acts of the executive department of the United States; and the fact that the section lines or quarter-section lines exhibited on a general plat of a township extending into or across lands granted by the government to a private owner does not cause them to lose their official character, and the map does not become, as to that part of it, a map merely of private lands, and hence not one of the records recognized under said section of the code.

[3] ID.—ACTION TO ENJOIN ANNEXATION ELECTION—SUFFICIENCY OF DESCRIPTION — EVIDENCE.—In this action by property owners within certain territory proposed to be annexed by a municipality to enjoin said city from holding an election to decide the question of annexation, on the ground that the proceedings were invalid because of alleged uncertainty in the boundaries described in the resolution of the board of trustees, the court was justified in looking to the township map introduced by the defendants, such map having been indorsed by the surveyor-general showing that it was strictly conformable to field-notes of the survey thereof on file in his office, and having been filed in the local United States land office in 1871, and in taking judicial notice of all the boundaries officially expressed thereon, notwithstanding part of the section lines and quarter-section lines extended into and across lands held in private ownership.

[4] ID. — LOCATION OF TERMINI AND DIRECTION OF CALL — DISREGARD OF CURVES AT STREET INTERSECTIONS.—Where the point of commencement of a call in a description, which runs in a given direction "in a straight line along the westerly prolongation of the southerly line" of a named street, is plainly indicated, and the terminus of the line is indicated as being in a designated section line at the east of the starting point, the curves in said street at intersecting street corners, such corners being turned in the form

of arcs of a circle in order to allow room for a small public park located at the center of the intersection, may be disregarded without creating any ambiguity or uncertainty as to what was intended to be indicated by the call.

APPEAL from a judgment of the Superior Court of Los Angeles County. Dana R. Weller, Judge. Affirmed.

The facts are stated in the opinion of the court.

Haas & Dunnigan for Appellants.

Clyde Woodworth for Respondents.

JAMES, J.—Plaintiffs, alleging themselves to be property owners within certain territory proposed to be annexed by the municipality of Inglewood, brought this action to secure judgment declaring proceedings theretofore taken on the part of the municipality in the direction of effecting such annexation void, and to secure a decree enjoining said city from holding an election to decide the question of annexation. Demurrer to the complaint was overruled and answer was filed. The cause went to trial, judgment being rendered against the plaintiffs. From that judgment this appeal has been taken.

It is contended that the evidence does not sustain the findings of the court as to the issue made by the pleadings respecting the boundaries of the district proposed to be annexed. It is because of alleged uncertainty in the boundaries described in the resolution of the board of trustees that the plaintiffs make their principal contention against the validity of the proceedings. It is first contended that the lines stated in that description as being lines of sections 22, 27, and 34, township 2 south, R. 14 west, S. B. M., did not constitute such a description as would enable persons interested to determine the boundaries fixed by those lines, because there was no map on file as a public record showing that official surveys had been made of which the court might take judicial notice. [1] Preliminarily it may be stated that if the description contained in the resolution was sufficiently definite to have answered for a private grant or conveyance, it would be sufficient for annexation purposes. (*In re Madera Irr. Dist.*, 92 Cal. 296, [27 Am. St. Rep. 106,

14 L. R. A. 755, 28 Pac. 272]; *Central Irr. Dist.* v. *De Lappe,* 79 Cal. 351, [21 Pac. 825].) **[2]** And under section 1875 of the Code of Civil Procedure the courts will take judicial notice of government surveys of public lands as public and official acts of the executive department of the United States. (*Rogers* v. *Cady,* 104 Cal. 288, [43 Am. St. Rep. 100, 38 Pac. 81]; *Kimball* v. *McKee,* 149 Cal. 435, [86 Pac. 1089]; *Waters* v. *Pool,* 130 Cal. 136, [62 Pac. 385].) It is admitted by the appellants that if at the time of the making of the resolution there was of record any map made under the official direction of the United States land surveyors, which map showed all of the lines referred to in the description contained in the resolution, such description would then be sufficient—this with the qualification that a map so made and existing must have been a map of the public lands of the United States. The qualification pre sents the contention that even though, through governmental agencies, official surveys are made, platted, and recorded, judicial notice will only be taken of such portions of the map as delineate the public lands, and not portions showing lines projected upon lands owned in private. In order to better understand the contentions of appellants it is necessary to make a further statement of facts: Upon the acquisition of the territory of California from the government of Mexico, certain grants of land were held by individuals under authority of the latter government, which grants were later confirmed by the United States. In 1873 there was patented to one Abila by our government a large tract of land in and about the present municipal limits of the city of Inglewood under the name of Rancho Sausal Redondo. A patent and a map defining the boundaries of the grant were filed in the office of the United States surveyor-general at San Francisco, and a copy was recorded in the office of the county recorder of Los Angeles County at about the same time. The boundaries of that rancho at the north and east were irregular in that they were not coincident with the south boundary line of section 22, or the west boundary line of sections 27 and 34 of the township mentioned, but were so laid that the rancho included portions of the southerly part of section 22 the westerly part of sections 27 and 34. With this condition in mind, appellants use it as a basis for the argument that the sections of the public land,

portions of which were included within the grant of the rancho, became fractional sections and that therefore there could be no public survey which would show officially the southerly line of section 22 or the complete westerly lines of sections 27 and 34. We cannot admit that the latter contention is a valid one, in view of the documentary evidence which the record discloses and which was before the court at the trial. If the court had been limited to the patent issued to Abila and its attendant plat in determining whether the resolution contained a sufficient description as to the lines referred to, such evidence would be insufficient. [3] However, defendants introduced before the court a map which purported to show complete township No. 2 south, with section lines indicated for the four sides of each of sections 22, 27, and 34, quarter-section lines indicated on section 22, and on the east half of section 27. This map bore the following indorsement: "The above map of Township No. 2 south, Range 14 west, San Bernardino Meridian, is strictly conformable to field notes of the survey thereof on file in this office which has been examined and approved. The Surveyor-General's Office, San Francisco, Cal., March 31, 1868. L. Upson, Sur. Gen. Cal." This map, it seems, was filed also in the United States land office at Los Angeles in 1871. As to its official character no question is made. The further indorsements on the map referred to designated various surveys which had been made use of in the preparation of the plat. There was first mentioned a survey of the north boundary of the township as having been made by Henry Washington, October 4, 1852, and this legend appears following: "Rest of township lines, Henry Hancock, July 5, 1853." Following these indorsements were legends referring to various rancho surveys including this: "Boundaries of Ro. Sausal Redondo, located by George Hanson under instructions from surv. gen. 1868. Section lines George Hanson, February 7, 1868." The plat attached to the official patent of the Rancho Redondo bears the indorsement that the land represented thereon had been "segregated from the adjoining public lands under direction from the U. S. Surveyor General by George Hansen, Dep. Sur. 1868." This is not a case where upon the existence only of a patent map the court has assumed to take judicial notice of the existence of section lines. The plat relied upon by defendants

is a general plat of the township and in so far as it ex-
hibited section lines or quarter-section lines, even though
such lines extended into or across lands granted by the gov-
ernment to a private owner, they nevertheless lost none of
their official character, neither, in our opinion, does the map
become, as to that part of it, a map merely of private lands
and hence not one of the records recognized under the pro-
visions of section 1875 of the Code of Civil Procedure.
Moreover, in a strict sense, at the time the section lines were
surveyed and delineated by Hansen (according to the in-
dorsement on the map) in 1868, the lands embraced within
the boundaries of Rancho Redondo were still a part of the
public domain; this for the reason that while they may have
been by that same survey segregated from the general body
of the land of the United States, title was not confirmed in
the grantee by patent issued until February, 1873. It has
been held that persons entitled to land under grants of the
Mexican government were considered not to have a vested
interest in any particular land after the territory was ac-
quired by the United States, but that they possessed a
vested interest in a specific quantity of land which it was
necessary to have allotted and measured off by the officers
of our government before the right was confirmed. (*Water-
man* v. *Smith,* 13 Cal. 373.) We think that the court was
justified in looking to that map, and in taking judicial
notice of all of the boundaries officially expressed thereon.

[4] Appellants complain of another alleged fatal in-
accuracy in the description used in the annexation proceed-
ings. The particular call in the description as to which
question is made reads as follows: "Thence easterly in a
straight line along the westerly prolongation of the south-
erly line of said Lindley Drive, the southerly line of said
Lindley Drive and easterly prolongation of the said south-
erly line of Lindley Drive to the quarter-section line which
divides the east and west halves of section 26, township 2
south, range 14 west." The whole difficulty claimed rests
upon the fact that at the intersection of a street which
crossed Lindley Drive at right angles between the starting
point and terminus, the corners of the street so intersecting
the southerly line of Lindley Drive were turned in the form
of arcs of a circle in order to allow room for a small public
park located at the center of that intersection. Appellants'

argument is that with the curved corners the line could not be followed as indicated in the ·description contained in the resolution.  We find no difficulty in following that description, for, as counsel for respondents well say, the point of commencement of the last call in the description is plainly indicated; the terminus of the line is indicated as being in the section line at the east of the starting point; the line is stated to be a straight line; hence the curves at the intersecting street corners would be disregarded without creating any ambiguity or uncertainty as to what was intended to be indicated by the call.

The findings of the court appear to fairly determine the facts and to sustain the judgment as entered.

The judgment is affirmed.

Conrey, P. J., and Shaw, J., concurred: