Town of Greenfield, Appellant, vs. City of Milwaukee, Respondent.

*February 10—March 6, 1956.*

For the appellant there were briefs by *Paul Gauer,* attorney, and *Robert J. Buer* of counsel, both of Milwaukee, and oral argument by *Mr. Buer.*

For the respondent there was a brief by *Walter J. Mattison,* city attorney, and *Richard F. Maruszewski* and *John F. Cook,* assistant city attorneys, and oral argument by *Mr. Maruszewski* and *Mr. Cook.*

MARTIN, J.  Ordinance No. 778, adopted by the common council of the defendant city on April 7, 1954, annexed to the city approximately two square miles of territory located in the plaintiff town.

Annexation procedure is prescribed by sec. 62.07, Stats., as follows:

"(1) *Annexation procedure.* Territory adjacent to any city may be annexed to such city in the manner following:

"(a) A petition therefor shall be presented to the council 1. signed by a majority of the electors in such adjacent territory and by the owners of one half of the real estate within the limits of the territory proposed to be annexed, or 2. if no electors reside in the said adjacent territory signed by the owners of one half of taxable property therein according to the last tax roll, or 3. by a majority of the electors and the owners of one half of the real estate in assessed value; provided, that no petition for annexation shall be valid unless at least ten days and not more than twenty days before any such petition is caused to be circulated, a notice shall be posted in at least 8 public places in the municipality in which the adjacent territory is located, and a copy of such notice published in a newspaper of general circulation within the county in which said adjacent territory is located, at least ten days prior to the time when such petition is caused to be circu-

lated, such notice to set forth that an annexation petition is to be circulated, and including an accurate description of the territory involved.

"(b) An ordinance annexing such territory to the ward or wards named therein shall be introduced at a regular or special meeting of the council after the filing of the petition, be published once each week for four successive weeks in the official paper and thereafter be adopted at a regular or special meeting by two thirds of all the members of the council."

It is alleged in the complaint and its amendments that the statute was not complied with in the following respects, among others:

1. The petition for annexation is invalid because it was circulated before ten days had elapsed after publication of the notice;

2. The owners who signed the petition did not describe the property for which they signed;

3. The petition contains certain signatures which are invalid for various reasons.

Annexation procedure is purely statutory.

"The formation of boundaries of cities is a legislative matter, and the legislature may authorize such procedure as it deems wise so long as it does not meet with constitutional restraint." *Zweifel v. Milwaukee* (1925), 188 Wis. 358, 364, 206 N. W. 215.

"A municipal corporation has no power to extend its boundaries otherwise than as provided for by legislative enactment or constitutional provision. Such power may be validly delegated to a municipal corporation by the legislature, and when so conferred must be exercised in strict accord with the statute conferring it. 37 Am. Jur., Municipal Corporations, p. 640, sec. 24. The legislature shall establish but one system of town and county government which shall be as nearly uniform as practicable, sec. 23, art. IV, Wisconsin constitution. By provisions particularly of sec. 62.07, Stats., and sec. 66.025 (annexation), and sec. 66.02 (consolidation), the legislature has prescribed a uniform method whereby territory of a town may become attached to a city." *Town of*

*Madison v. City of Madison* (1955), 269 Wis. 609, 615, 70 N. W. (2d) 249.

In this opinion, as to whether the procedure here complied with that outlined by the statutes, we will discuss the objections and the facts with respect thereto in the same order as they are set out above.

1. The petition for annexation is alleged to be invalid because it was circulated before ten days had elapsed after publication of the notice.

Two questions are presented in considering this objection. First, as to date of publication: There is in the record, as a part of Exhibit 3-A (common council file) an affidavit of the printer for the Daily Reporter stating that the notice of circulation of the petition was published in said newspaper on January 28, 1953. There is also in evidence as Exhibit 9 a copy of the Daily Reporter dated January 27, 1953, which contains the same notice with an error in the legal description of the territory. It is appellant's contention that the publication to be used is that of January 28th. The trial court found that the notice was published on January 27th; that it was republished on the next day to correct a typographical error which was inconsequential since the erroneous description (reading "91 feet" instead of "915 feet") could mislead no one and it was possible from a reading thereof to ascertain the territory included in the proposed annexation.

While there is no case in Wisconsin on the precise question as to what rules shall be applied in determining the sufficiency of a description in an annexation proceeding, a number of cases from other jurisdictions were cited by the trial court, holding the rules applicable to descriptions in deeds are applicable in a case such as this, *e. g., Wagner v. Inglewood* (1921), 53 Cal. App. 356, 200 Pac. 60. This court has upheld the validity of conveyances where the descriptions of lands, though literally erroneous or incomplete, are susceptible of reasonable identification. See *Heller v.*

*Baird* (1926), 191 Wis. 288, 210 N. W. 680; *Spence v. Frantz* (1928), 195 Wis. 69, 217 N. W. 700. As the trial court pointed out:

"An examination of said description clearly discloses that the language 'east on a line 91 feet north of and parallel to the south line, etc.,' was meant to read '915 feet' instead of '91 feet.' The description as it appeared in the notice published on the 27th day of January, 1953, identified only one area, and if we backtrack the description, even with the error referred to, from an ascertainable terminus such as the old center line of West Forest Home avenue, we will find that the numeral '91' was intended to be '915.' "

In determining that the publication of January 27th could be used in computing the statutory time, the trial court must be affirmed. Sec. 62.07 (1) (a), Stats., requires only that a copy of the notice be *published* at least ten days before the petition is to be circulated. There is no requirement that its publication be proved by affidavit, and under the circumstances it was for the trial court to accept whatever evidence of publication it considered proper.

Second, as to date of circulation: The evidence shows that the date of February 6, 1953, follows a number of signatures on the petition which, according to the testimony of a handwriting expert, was altered to February 9, 1953, by persons who were not the respective signers. Three persons who circulated the petition testified that they began the circulation on February 7, 1953; that thereafter, having heard that the first day the petition could legally be circulated was February 9, 1953, they changed the dates, in a number of instances with the permission of the signers. While their authority to alter the dates was denied by several signers who testified, none of those who testified could remember the date on which they signed.

The statute does not require that the date of signing of the petition appear on its face; the dates appearing thereon are

merely evidence of the date of signature. However, the trial court based its finding on the testimony of the circulators that circulation was commenced on February 7, 1953.

On the basis of these findings, the statutory requirement that the notice be published at least ten days before the petition is circulated was complied with.

In connection with its argument on this point appellant states that it requested the court, under sec. 325.14, Stats., to be permitted to call the circulators of the petition as adverse witnesses and that the court, in denying said request, committed prejudicial error. The statute provides that any person for whose immediate benefit any proceeding is prosecuted or defended, or his officers, agents, or employees, may be examined upon trial as if under cross-examination, at the instance of any adverse party.

In this action it is the ordinance of the city of Milwaukee which is being defended. The circulators are residents of the appellant town; there is no relationship of employment or agency, or any other relationship, between them and the respondent city. They are not defendants and no relief is sought or could be obtained from them. They are not adverse to the town simply because their views on the proposed annexation are not those of the town nor can it be said that they receive any such immediate benefit from the defense of this action as is contemplated by sec. 325.14, Stats. Furthermore, even assuming that the trial court's refusal was error, there is nothing in the record to show that appellant was prejudiced thereby.

2. The owners who signed the petition did not describe the property for which they signed.

None of the owners who signed the petition inserted their property descriptions after their signatures and appellant contends that this nullifies the petition. The trial court found that sec. 62.07, Stats., does not require the insertion of the description of land owned by each of the signers opposite

their names in the petition and the absence of such individual descriptions does not invalidate the petition. We agree.

Appellant argues that when the statute requires that the petition be signed by the owners of one half of the assessed valuation of the property within the territory to be annexed, it "implies that each owner must indicate what land he is signing for." This argument would more properly be addressed to the legislature. It might have some weight here if appellant had shown that the lack of a description by the signers of the land owned by them made it impossible for the city to comply with the statute and determine the assessed valuation of the real estate represented by the signatures on the petition, but it made no such showing. It merely suggests that if the descriptions in the deeds of the property owners were checked "we are sure" it would be found that assessed valuations have been used which are attributable to property not within the area covered by the annexation. This is hardly proof that the valuation determined by the city was incorrect.

3. The petition contains signatures which it is alleged are invalid for various reasons.

Of the signatures appellant contends are invalid, an assessed valuation of $128,410 is attributed to persons who signed the petition as "Mrs. John Smith" whereas the record title ownership is in the name of "Mary Smith." The trial court held that such a variance is immaterial and refused to invalidate the valuation signed for.

It must be emphasized that the validity of the annexation ordinance is presumed until overcome by the appellant, and in connection with this particular question it is presumed that "Mrs. John Smith" and "Mary Smith" are one and the same person until appellant shows they are not. Since appellant failed to do so, the presumption of validity is not overcome.

An assessed valuation of $116,850 is attributed by appellant to signatures it contends are invalid because incorrect

key numbers or descriptions of property owned by such signers are listed on the petition after their names. As pointed out by the trial court, the statute does not require a description of the property to be given at all and therefore incorrect descriptions listed on the petition do not constitute a defect.

In attacking the valuation upon which the ordinance is based it was incumbent upon the appellant to show either that the real estate described by such key numbers or descriptions is not in the territory to be annexed or that the owners thereof did not sign the petition. The record is devoid of any such evidence.

Appellant further contends that $394,605 should be deducted from the assessed valuation because date alterations and premature signing of the petition invalidate the signatures of persons whose property is valued at that amount.

The answer to this contention is contained in our discussion of appellant's first objection where we approve the trial court's finding that circulation of the petition was commenced on February 7, 1953.

Appellant concedes that it has the burden of invalidating over $491,973 of assessed valuation in order to show that less than the required one half of assessed valuation of the proposed annexed territory is accounted for by the signatures on the petition. The total valuation represented by signatures which it contends are invalid is $852,938. Of this total amount we hold valid signatures accounting for $639,865. Therefore, if we were to agree with the appellant as to its other objections on the validity of particular signatures, it would still be shown that the valid signatures represent more than one half of the assessed valuation of the territory to be annexed. Under the circumstances we find it unnecessary to discuss such other objections.

*By the Court.*—Judgment affirmed.