CITY OF MADISON, Respondent, v. VILLAGE OF MONONA, Appellant.

ENGELHART, Respondent, v. SAME, Appellant.

*March 7—April 5, 1960.*

34

For the appellant there was a brief by *Robert C. Buehner,* attorney, and *Immell, Herro, Buehner & DeWitt* of counsel, all of Madison, and oral argument by *Jack R. DeWitt.*

For the respondents there was a brief and oral argument by *Harold E. Hanson,* city attorney, for the city of Madison, and *C. Bruce Thomas* of Madison, for Herbert M. Engelhart.

DIETERICH, J.  On May 5, 1958, respondent Engelhart sought to annex certain territory in the town of Blooming Grove to the city of Madison, and on May 6, 1958, Thomas O. Mackesey sought to annex part of the same territory to the village of Monona.

The law is well settled that where two proceedings are begun about the same time and in good faith, whereby each attempts to annex the same area, the proceedings first instituted must have precedence. *Greenfield v. Milwaukee* (1951), 259 Wis. 77, 47 N. W. (2d) 292, and *In re Village of St. Francis* (1932), 208 Wis. 431, 436, 243 N. W. 315.

For the purposes of this opinion we will review the procedure under sec. 66.021, Stats., respecting the Engelhart petition of May 5, 1958.

The defendant, village of Monona, attacks the validity of the annexation proceeding of the plaintiffs on three grounds:

(1) Whether or not plaintiffs' annexation proceeding was commenced on May 5 or May 6, 1958.

In this respect it questions the validity of the notice of intent to annex the subject territory. The first notice was published in the Wisconsin State Journal on May 5, 1958. The printer at the Wisconsin State Journal, in its publication of the notice on May 5, 1958, inadvertently deleted the heading of the legal description of the land to be annexed. The heading read as follows: "Part of sections 30 and 31, town 7 north, range 10 east, town of

Blooming Grove, Dane county, Wisconsin, more particularly described as follows:" Thereafter, on May 6, 1958, the notice of intent to annex was republished in the Wisconsin State Journal with the afore-quoted heading included. The record indicates that the republication on May 6, 1958, of the second notice, on behalf of the plaintiffs was done by the newspaper without any request, authority, or solicitation on the part of the plaintiffs.

Sec. 66.021 (3) (a) 2, Stats., provides:

"A description of the territory proposed to be annexed, sufficiently accurate to determine its location."

The date of the first publication is important for the reason that on May 6, 1958, the defendant's notice of intent to annex was also published in the Wisconsin State Journal.

The trial court found that the plaintiffs' first publication on May 5, 1958, is valid, proper, and adequate compliance with sec. 66.021 (3) (a) 2, Stats., and that the inadvertent omission of the caption in the May 5, 1958, publication was an immaterial omission which in no way invalidated the notice, and we concur in the trial court's conclusions. The omission of the caption in no way affected the legal description contained in the body of the notice of May 5, 1958. The legal description contained therein was sufficiently accurate so as to identify the location of the property to be annexed, and therefore constitutes compliance with sec. 66.021 (3) (a) 2. *Greenfield v. Milwaukee* (1956), 272 Wis. 388, 392, 75 N. W. (2d) 434; *Heller v. Baird* (1926), 191 Wis. 288, 210 N. W. 680; and *Spence v. Frantz* (1928), 195 Wis. 69, 217 N. W. 700.

(2) Plaintiffs' noncompliance with the requirements of sec. 66.021 (3) (b) and sec. 66.021 (4) (a), Stats.

Sec. 66.021 (3) (b), Stats., provides:

"The person who causes the notice to be published shall serve a copy of such notice, together with a copy of the scale map required under sub. (4) (a), upon the clerk of each municipality affected within five days of the date of publication of the notice. Such service may be either by personal service or by registered mail with return receipt requested."

Sec. 66.021 (4) (a), Stats., provides:

"The petition shall state the purpose of the petition and contain a description of the territory proposed to be annexed, sufficiently accurate to determine its location, and have attached thereto a scale map reasonably showing the boundaries of such territory and the relation of the territory to the municipalities involved."

The contention of the defendant is that the purported scale map which was served on the clerk of the town of Blooming Grove and annexed to the petition was neither a scale map nor did it reasonably show the boundaries of the territory proposed to be annexed.

Mr. Gawlik, an assistant city engineer, who prepared the map, testified as follows:

"Q. Now, does this map accurately portray the description of territory that is contained in that notice that I just showed you? A. No, it does not. There is a slight error in the map.

"Q. And where does this error occur? A. Well, this error occurs between the westerly line of the drainage ditch and the east line of the northwest one quarter of the northwest one quarter. I show it as being one and the same lines. It is not."

Mr. Wahlberg, an expert surveyor called by the defendant, testified: "The scale that is on this map, I am sorry to say I don't have on this engineer's scale I have here."

The map reasonably shows the boundaries of the territory proposed to be annexed, the relation of the territory to the city of Madison, and that it is contiguous thereto. There is no evidence to substantiate the defendant's contention that the map is not scaled. The only testimony in support of its contention is that of Mr. Wahlberg, the surveyor, and he stated he could not scale it with the engineer's scale he had at the trial. We conclude the map is a scaled map and meets the requirements of the statute.

(3) The defendant attacks the city ordinance of annexation on the ground that it fails to comply with the provisions of sec. 66.021 (2) (a) 1, Stats., which provides:

"(2) *Methods of annexation.* Territory contiguous to any city or village may be annexed thereto in the following ways:

"(a) Direct annexation. A petition for direct annexation may be filed with the city or village clerk signed by:

"1. A majority of the electors residing in such territory . . ."

The plaintiffs contend that the only electors residing in the territory to be annexed were the three Engelharts and each one of them signed the petition. Defendant maintains that Mrs. Hulda Sunderlage, her son Darrell, and his wife Roberta Sunderlage, are also electors residing in said territory. It is undisputed that the three Sunderlages are electors. The only question, therefore, is whether they resided in the territory included in the Engelhart petition for annexation.

There is a dispute among the expert witnesses as to how much of the Sunderlages' farmyard was included in the annexed territory. In order to bring this dispute into better focus, the parties to this action as well as the court used two diagrams, one prepared by the plaintiff and one prepared by the defendant, which graphically depict the respective

claims of the parties. It was used by counsel for both sides in their oral argument, but was not made a part of the record.

The plaintiffs' version contained in its diagram is based upon the testimony of Surveyor Ely as to where he located the northwest quarter line which forms part of the eastern boundary of the annexed territory.

The defendant's version in its diagram is based on the survey made by its experts and clearly placed the Darrell and Roberta Sunderlage residence in the annexed territory. The defendant's surveyors relied on evidence found in the field and they located the northwest quarter-quarter line along an old property fence line which divided the Engelhart and Sunderlage properties.

The trial court, in making its determination on which survey was the correct one, adopted the survey made by Mr. Ely, the surveyor of the plaintiffs, for the reason that Mr. Ely started his survey from the corner post of the northeast quarter of the northwest quarter of section 31. This quarter corner post was the post established by the government surveyors, and in carrying out his survey Mr. Ely relied on the original government survey notes. These government notes were ignored by defendant's surveyors who relied on field evidence, *i.e.*, the property line fence.

The trial court then stated:

"It is true that by locating the northeast corner post of the northwest quarter of section 31 as established by the government survey and in following the original notes of said survey, the Ely survey resulted in giving the northwest quarter of the northwest quarter of section 31 an acreage deficiency. For example the north line of the northeast quarter of the northwest quarter is 20 full chains or 1,320 feet. On the other hand, the north line of the

northwest quarter of the northwest quarter is less than 20 full chains. It measures precisely 1,202.50 feet.

"All of the foregoing is consistent with the fact that government surveyors operating under the Northwest Ordinance and its related acts were required to consider the convergence of meridians caused by the curvature of the earth's surface and make necessary corrections to take care of the resulting acreage deficiency. Such deficiency was uniformly thrown into the western tier of townships and in particular the most westerly quarter-quarter sections. That accounts for the acreage deficiency here in the northwest quarter of the northwest quarter of section 31.

"What it actually does here, of course, is to locate the Darrell and Roberta Sunderlage residence not less than seven feet nor more than 22½ feet east of the east line of the annexed territory."

We concur in the trial court's determination.

The petitioners were not required by the statute to include the Sunderlages' residences in the annexation proceeding and not being residents and electors within the territory which Engelhart sought to annex to the city of Madison, their signatures were not required. The Sunderlages were and still are resident electors of the town of Blooming Grove. *Vroman v. Dewey* (1868), 23 Wis. 530; *Lewis v. Prien* (1897), 98 Wis. 87, 73 N. W. 654.

The defendant also makes an issue of the fact that part of the yard, garden, and privy of the Sunderlages was included, but that their residences and houses were excluded.

The statute places no restrictions or requirements as to the amount of territory to be included, and it does not require that the boundaries of such territory be according to any set pattern. The gerrymandering of the boundaries of the territory to be annexed was discretionary with the petitioners. *In re Village of Oconomowoc Lake* (1959), 7 Wis. (2d) 400, 97 N. W. (2d) 189.

·In *State ex rel. Joyce v. Deneen* (1930), 201 Wis. 646, 651, 231 N. W. 174, it is said:

"Matters which affect the equities of the situation with reference to the various districts and parties are therefore immaterial. If the petition is in compliance with the law, the matter is at end and the territory must be detached."

The annexation proceedings of Engelhart and the city of Madison having been commenced by the publication of the Engelhart notice on May 5, 1958, and the requirements of sec. 66.021, Stats., having been substantially complied with, the judgment of the trial court is affirmed.

Because of the result reached herein all other questions concerning the validity of the proceedings for annexation to the village of Monona commenced on May 6, 1958, become moot.

*By the Court.*—Judgment affirmed.