TOWN OF MENASHA, Appellant, v. CITY OF MENASHA, Respondent. (Banta Annexation—No. 246, Schwarzbauer Annexation—No. 247.)

*Nos. 246, 247. Argued May 6, 1969.—Decided June 3, 1969.*
(Also reported in 168 N. W. 2d 161.)

For the appellant there were briefs by *George M. St. Peter* and *Steven P. Sager,* attorneys, and *St. Peter & Hauer* of counsel, all of Fond du Lac, and oral argument by *Mr. George M. St. Peter* and *Mr. Sager.*

For the respondent there was a brief by *Richard J. Steffens,* city attorney, attorney, and *Brady, Tyrrell, Cotter & Cutler* and *Richard W. Cutler* of counsel, all of Milwaukee, and oral argument by *Mr. Richard W. Cutler* and *Mr. Steffens.*

HANLEY, J. The town of Menasha contends the Schwarzbauer annexation is void for the following reasons:

(1) A prior annexation proceeding was commenced;

(2) A proper description of the property to be annexed was not served on the state of Wisconsin;

(3) The annexation petition was not signed by a sufficient number of property owners; and

(4) The city used improper pressure in promoting the annexation.

### 1. Prior Annexation Proceeding.

It was noted in the facts that the city of Menasha actually started three annexation proceedings involving the same territory. After publishing the first and second "notices of intent," further proceedings were apparently abandoned by the city. No petition for annexation was

ever circulated involving the area described in the first and second "notices of intent."

The town complains that the publishing of the first "notice of intent" invalidated a subsequent annexation proceeding. In support of its contention, the town cites *Brown Deer v. Milwaukee* (1956), 274 Wis. 50, 79 N. W. 2d 340.

The *Brown Deer Case* itself contains clear language which rejects the contention of the town.

"It is the established law of this state that *in case of conflict between competing annexations,* or between an annexation and a proceeding for the incorporation of a city or village, the proceeding first instituted has precedence, and the later one must yield. . . ." *Brown Deer v. Milwaukee, supra,* at page 58. (Emphasis supplied.)

There was no competing annexation proceeding involved here. No other body was trying to annex this territory in opposition to the city of Menasha. All three notices of intent were published by the same party.

". . . The two proceedings seek the same end and there is no conflict between different jurisdictions whereby one jurisdiction by an earlier start has priority over the attempt of a second jurisdiction. . . ." *Greenfield v. Milwaukee* (1956), 273 Wis. 484, 488, 78 N. W. 2d 909.

The first and second "notices of intent" were abandoned when the city failed to circulate petitions pursuant to such notices. Sec. 66.021 (4) (c), Stats., requires the circulation of the petition for annexation not less than ten days or more than twenty days after publication of the notice.

We think the trial court was correct in rejecting this portion of the town's argument.

*2. Service of Description on the State.*

The town contends the city did not comply with sec. 66.021 (11) (a), Stats., which provides:

"No annexation proceeding within a county having a population of 50,000 or more . . . shall be valid unless the person causing a notice of annexation to be published . . . shall within 5 days of the publication mail a copy of the notice and a scale map of the proposed annexation to the clerk of each municipality affected and the head of the planning function in the department of local affairs and development. . . ."

The annexation proceeding in this case was commenced on August 14, 1965. On August 17, 1965, the city attorney of Menasha wrote to the state planning director. The affidavit of the city attorney which is in the record states that included with the letter was a scale map of the area proposed for annexation and a copy of the "notice of intent" which was published in the official city newspaper.

On August 19, 1965, the state planning director wrote to the city attorney of Menasha stating that he had received a scale map of the proposed annexation, but that he had not received "a detailed legal description" [2] of the area to be annexed. The city attorney responded that the required description had been sent "but on the chance it was misplaced I am forwarding another."

The town and city both agree that the state planning director had the scale map and the detailed legal description after August 23, 1965. The town maintains, however, that sec. 66.021 (11) (a), Stats., required the necessary documents to be mailed by August 19. It is urged that the failure to comply with the statutes invalidated the annexation.

The trial court made a specific finding of fact that the city complied with the notice requirements of sec. 66.021:

[2] Exhibit 58 is a copy of the "notice of intent" for the Schwarzbauer annexation. The "notice of intent" contains the legal description of the property to be annexed. Sec. 66.021 (11) (a), Stats., requires that a copy of the "notice of intent" be mailed to the state planning director. When the parties argue that the "detailed legal description" was not sent, they are obviously referring to the copy of the "notice of intent."

"If a finding of the trial court is not contrary to the great weight and clear preponderance of the evidence it must be sustained. . . ." *Greenfield v. Milwaukee, supra,* at page 485.

The affidavit of the city attorney supports the finding of the trial court. Obviously, the trial court chose to rely on the evidence that the legal description was sent.

The finding of the trial court is not against the great weight and clear preponderance of the evidence, and it must be sustained.

### 3. Annexation Petition Not Properly Signed.

This is by far the most serious contention of the town, and it is the proposition which the briefs are mainly directed to.

The Schwarzbauer annexation was a proceeding pursuant to sec. 66.021 (2) (a), Stats. That statute provides that the petition for annexation must be signed by "the owners of one-half of the land in area within such territory."

Three experts testified regarding the acreage involved in the petition and the acreage owned by the signers of the petition for annexation. Mr. Robert Poss testified on behalf of the city that 183.52 acres were involved in the annexation petition, that the signers of the petition owned 92.99 acres, and that the nonsigners owned 90.53 acres. Mr. Robert Heaslett testified on behalf of the city that 183.6952 acres were involved in the annexation petition and that the signers owned 93.0824 acres. Mr. Robert McMahon testified on behalf of the town that 183.61 acres were involved in the annexation petition, that the signers owned 91.23 acres and that the nonsigners owned 92.38 acres.

There were 2.24 acres within the area described in the annexation petition which were being used as a state highway. The city experts included that highway acreage

with the signers while the town expert included that area with the nonsigners. The highway (State Highway 47) abuts the property of one of the signers of the annexation petition, Mr. Carl Schwarzbauer.

The city contends that the state only has a highway easement, and that Mr. Schwarzbauer is the "owner" of the 2.24 acres as that term has been defined in sec. 66.021 (1) (a), Stats.[3]

The town argues that Mr. Schwarzbauer was not the owner in possession in fee simple as required by sec. 66.021 (1) (a), Stats., and that Mr. Schwarzbauer only had a reversionary interest in the highway property. We do not agree with this contention. An easement is not an estate in land:

". . . An easement has been defined in Wisconsin as a liberty, privilege, or advantage in lands, without profit, and existing distinct from the ownership of the soil. . . . an easement differs from a fee or a limited fee in that in case of an easement title does not pass but only a right to use or privilege in the land of another. . . ." *Colson v. Salzman* (1956), 272 Wis. 397, 401, 75 N. W. 2d 421.

An estate in possession in fee simple is not reduced to a lesser estate by the granting of a highway easement.

In any event the trial court excluded the 2.24 acres of highway from the total of the territory to be annexed (for example, he did not give it to either the signers or the nonsigners). According to the figures of Robert Poss that left 90.75 acres for the signers and 90.53 for the nonsigners. Using Robert Heaslett's figures, the signers would then have 90.8424 acres and the nonsigners would

---

[3] Sec. 66.021(1) (a), Stats., provides:

" 'Owner' means the holder of record of an estate in possession in fee simple, or for life, in land or real property, or a vendee of record under a land contract for the sale of an estate in possession in fee simple or for life but does not include the vendor under a land contract. A tenant in common or joint tenant shall be considered such owner to the extent of his interest."

have 90.6128 acres. According to Robert McMahon's computations, the signers then owned 91.23 acres and the nonsigners owned 90.14 acres. In each case the petitioners always owned more than 50 percent of the property in question. The specific finding of the trial court was that "more than 50% of the property involved in the annexation was owned by the petitioners for the annexation."

There is no Wisconsin decision which specifically discusses the relationship of public highways to an annexation petition. One other state which considered the problem which is raised here adopted the same approach used by the trial court.

"It appears that the legislative purpose and object in enacting article 11 was to afford landowners, as that term is defined in the statutes, an orderly opportunity to petition for annexation of their lands to a municipality if they can procure more than 50% of the persons who own more than 50% of the land sought to be annexed. It is not reasonable to assume or hold that the legislature intended to impose an additional burden or requirement upon the landowners in favor of annexation by requiring them to overcome, with their petition, the area which goes to make up the public streets, alleys and roads. . . ." *Denver v. Holmes* (1965), 156 Colo. 586, 590, 400 Pac. 2d 901.

In the Colorado case, the petitioners for annexation owned 48 percent of the total land but 58 percent of the land after roads, streets, alleys and rights-of-way are excluded. It was stipulated in that case that the county *owned* the public ways in the territory sought to be annexed. The county was prohibited from voting for or against annexation because only landowners could petition for annexation. Landowners were defined as:

". . . 'owners in fee of real property in the territory to be annexed who have, the next preceding calendar year, *become liable for property tax thereon*' . . ." *Denver v. Holmes, supra,* at page 589. (Emphasis supplied.)

The situation in this case is distinguishable from the Colorado case on two important grounds. First, there is no proof that Winnebago county owned the highway land in question. Second, even if the county did own the highway land, it could qualify as an "owner" under sec. 66.021 (1) (a), Stats.

In *Town of Madison v. City of Madison* (1960), 12 Wis. 2d 100, 105, 106 N. W. 2d 264, this court stated:

"Sec. 66.021 (1) (a), Stats., defining who may be an owner to sign a petition for annexation, provides an owner means the holder of record. This section contains no limitation or exclusion of a municipality. None of the prior sections of the annexation statutes defining owner included any such limitation. . . ."

Likewise, neither the state, the county, nor any other public body is excluded as an "owner." If the owner of record qualifies under sec. 66.021 (1) (a), Stats., the land can be voted for or against an annexation petition. In Wisconsin, there is no reason to exclude a public highway from the total area involved in an annexation petition.

In applying the above conclusion to the facts of this case, an immediate problem is encountered. The record simply does not disclose who the record titleholder is to 1.66 acres of the 2.24 highway acres in question.[4]

The failure to prove ownership of the remaining 1.66 acres of highway land benefits the petitioners for annexation by operation of law.

". . . There is a common-law presumption of validity which attaches to an annexation ordinance that remains until overcome by proof produced by the party attacking it." *Mt. Pleasant v. Racine* (1965), 28 Wis. 2d 519, 524, 137 N. W. 2d 656. *See also: Greenfield v. Milwaukee* (1956), 272 Wis. 388, 75 N. W. 2d 434.

---

[4] It is clear that the record holder of .58 acres of the 2.24 acres is Carl Schwarzbauer. In 1955 Carl Schwarzbauer conveyed a highway easement to Winnebago county for the widening of Highway 47.

It was the burden of the objectors to the annexation ordinance to show that the signers of the annexation petition did not qualify as owners of 50 percent of the land in question. The evidence produced by the town on this point was not sufficient to overcome the presumption of validity and the highway acres in question must be allocated to the signers of the annexation petition.

The town advances a second argument to prove that the signers of the annexation petition did not own 50 percent of the territory to be annexed. The town's claim is that on August 25, 1965, the day the annexation petition was filed with the city clerk, the National Manufacturers Bank of Neenah, Wisconsin, owned a 15 percent undivided interest as a tenant in common in approximately 58 acres of the property involved in the annexation proceeding. The entire 58 acres were allocated to the signers of the annexation petition, but the bank did not sign the petition. If 15 percent of the 58 acres is deducted from the total acreage allotted to the petitioners for annexation, the annexation ordinance is invalid.

A review of the facts leading up to the town's contention is in order. In June, 1965, the Schwarzbauer family owned approximately 80 acres of land in the area involved in this case. Some of the land was owned by Carl Schwarzbauer and the remainder of it was owned by his two sons and their respective wives. Prior to the first part of August, 1965, the Schwarzbauers agreed, both individually and collectively, to sell about 70 acres of this land to the city of Menasha. However, to reduce the amount of income tax which was to be realized from the sale of this 70 acres, a plan of tax avoidance was devised. The plan involved the creation of two separate trusts.

The first trust ("Schwarzbauer trust") was created on August 13, 1965. On that day Carl Schwarzbauer and his wife conveyed an undivided 15 percent interest in

about 45 acres to the National Manufacturers Bank of Neenah, Wisconsin, as trustee. The arrangement called for the bank to sell this land to the city.

The second trust ("Schwarzbauer Junior trust") was also created on August 13, 1965. The two sons of Carl Schwarzbauer and their respective wives also conveyed an undivided 15 percent interest in about 13 acres to the National Manufacturers Bank of Neenah, Wisconsin, as trustee. This land was also to be sold to the city.

The city did not receive a deed from the bank for the 15 percent interest until sometime in September, 1965. The town contends that on August 25, 1965, when the annexation petition was filed with the city clerk the petition was defective because it did not contain sufficient signatures.

The city admits it did not have a deed to the 15 percent interest on August 25, 1965. However, on August 19, 1965, the city claims it paid the bank in full for the property.[5] The city further contends that the bank was merely acting as a transfer agent for this property, that it never had the interest of a tenant in common, and that it held bare legal title solely for tax purposes.

The trial court made the following finding of fact:

"That the sale of the real estate by the Schwarzbauers to the City of Menasha was entered into and a complete transaction for a single price negotiated at arms length and which price represents the fair market value of the land involved; that the completion of said transaction by a conveyance by the Schwarzbauers to the National Manufacturers Bank of Neenah was a matter of convenience only, the Bank never becoming a co-tenant with the Schwarzbauers and performing only a ministerial act at the direction of the Schwarzbauers for tax purposes."

---

[5] The city's check to the bank as trustee was, in fact, dated August 19, 1965. It was not deposited by the bank until September 10, 1965.

The clear language of sec. 66.021, Stats., provides that the petition for annexation must be signed by "the *owners* of one-half of the land" in the area to be annexed. "Owner" is specifically defined in sec. 66.021 (1) (a), Stats., as

". . . the holder of *record* of an estate in possession in fee simple, or for life, in land or real property, or a vendee of record under a land contract for the sale of an estate in possession in fee simple or for life but does not include the vendor under a land contract. A tenant in common or joint tenant shall be considered such owner to the extent of his interest." (Emphasis supplied.)

The deeds from the Schwarzbauers to the bank were never recorded until September, 1965.[6] As of August 25, 1965, the Schwarzbauers were the record owners of the property in question. The fact that the tenant in common is mentioned in a separate sentence of the definition does not free him from the requirement of being a "holder of record."

Since the Schwarzbauers were the record titleholders to the property in question on August 25, 1965, they were the only persons who could sign the petition for annexation as "owners."

The town also challenges the inclusion of some smaller areas within the land owned by the signers. Resolution of the issues presented regarding those lands (which altogether total less than one acre) is unnecessary because even if the town prevailed in its argument, the petitioners for annexation owned more than 50 percent of the land in question.

### 4. *Improper Pressure by City.*

The town contends that the purchase price paid for the Schwarzbauer property by the city ($3,700 per acre)

---

[6] The deeds from the Schwarzbauers to the bank were recorded when the deed from the bank to the city was recorded.

was inflated and that the offer to purchase was conditioned upon the Schwarzbauers signing the annexation petition as electors and as owners of their remaining property in the area. There was no direct evidence to support this allegation.

The trial court specifically found that the price paid by the city for the property "represents the fair market value of the land involved," and that "no economic pressure was used by the City of Menasha upon the Schwarzbauers to sign said petition for annexation."

The Schwarzbauers all testified that the sale of their land was not conditioned upon any annexation proceedings. The findings of the trial court are not against the great weight and clear preponderance of the evidence, and they must be sustained.

### Banta Annexation.

The second annexation ordinance involved in this appeal was enacted on July 18, 1967. Once again the city of Menasha annexed territory from the town of Menasha. This time the annexation was sought under sec. 66.021 (2) (a) 2b. This section applies when no electors reside in the territory to be annexed. The petition for annexation must be signed by the "owners of one-half of the real property in assessed value within such territory."

The town began this action challenging the validity of the annexation ordinance on July 28, 1967.

The Banta annexation was initiated on June 1, 1967, when the George Banta Company, Inc., published a "notice of intent" to circulate an annexation petition. A copy of the "notice of intent" and a scale map of the proposed annexation was delivered to the state planning director on June 2, 1967. The state planning director found the annexation to be against the public interest.

Between June 14 and June 21, 1967, the petition for annexation was signed by the owners of approximately

82 percent of the real property (measured in assessed value) included in the annexation territory. The petition was duly filed with the city clerk and the city adopted the annexation ordinance.

The town contends the Banta annexation ordinance is void for the following reasons:

(1) The legal description of the property to be annexed was erroneous;

(2) The annexation violated the rule of reason; and

(3) The city used improper pressure in promoting the annexation.

### 1. Erroneous Description.

It is undisputed that the "notice of intent," the annexation petition and the annexation ordinance all contained the same legal description of the property involved here.

In applicable parts the legal description reads:

"That land contained partially in the North one-half (N. ½) of Section eleven (11), the South one-half (S. ½) of Section two (2) and Butte Des Morts Heights Plat, all located in Township twenty North (T. 20N.), Range seventeen East (R. 17E.), Town of Menasha, Winnebago County, Wisconsin, described as follows:

". . . thence Due West along the North line of said Section eleven (11), three (3) feet, to a point which is six hundred sixty (660) feet *West* of the North West corner of said Section eleven (11); . . ." (Emphasis supplied.)

The italicized word presents the problem in this case. If, in following the legal description, a party went "Due West along the North line of said Section eleven (11), three (3) feet," he would be at a point which is 660 feet *east* of the northwest corner of section 11.

The city contends that the error is patent and that all interested parties received a scale map which correctly showed the area to be annexed.

The town contends that it was misled by the error and that the city has not complied with the annexation statutes.

The trial court made the following finding of fact:

"That the description of the property to be annexed contained a patent error, which was not misleading to anyone, and that the description in spite of such error was clear and easily ascertainable."

The statutory section which is involved in this dispute is sec. 66.021 (3) (a) 2.

"(3) Notice (a) The annexation shall be initiated by publishing in the territory proposed for annexation a class 1 notice, under ch. 985, of intention to circulate an annexation petition. The notice shall contain:

" . . .

"2. A description of the territory proposed to be annexed, *sufficiently accurate to determine its location.*" (Emphasis supplied.)

This court has considered two other cases which discussed the effect of an erroneous description in a "notice of intent."

In *Madison v. Monona* (1960), 10 Wis. 2d 32, 102 N. W. 2d 206, a newspaper printer erroneously deleted the "heading" [7] of a legal description in a "notice of intent." The trial court determined that the omission was immaterial. This court stated on appeal, at page 36:

". . . The omission of the caption in no way affected the legal description contained in the body of the notice of May 5, 1958. The legal description contained therein was sufficiently accurate so as to identify the location of the property to be annexed, and therefore constitutes compliance with sec. 66.021 (3) (a) 2. . . ."

In *Greenfield v. Milwaukee* (1956), 272 Wis. 388, 393, 75 N. W. 2d 434, a "notice of intent" contained an erro-

[7] The "heading" was that initial paragraph of the legal description which describes the town, range, and section numbers which a particular parcel of land is located in.

neous legal description which stated "91 feet" instead of "915 feet." The trial court stated that the error was inconsequential because it was possible to ascertain the territory included in the proposed annexation. The trial court was affirmed on appeal.

The town argues that the difference between the cases cited above and this case is that the erroneous description was misleading.

Counsel's argument that the description was misleading was based on the premise that the literal language of the description would bound an area which includes electors. Thus he claims he based his complaint and his case at trial on the proposition that electors were in the area proposed to be annexed (whereas the statutory procedure following in adopting the ordinance was for an area which did not include electors). We doubt that counsel was so easily misled.

The error in the description was obvious to anyone who followed the metes and bounds description involved. The description states:

". . . thence Due West along the North line of said Section eleven (11), *three* (3) *feet* . . ." (Emphasis supplied.)

The description clearly calls for a short movement from the preceding reference point. The description then contains the erroneous words:

". . . to a point which is six hundred sixty (660) feet *West* of the North West corner of said Section eleven (11) ; . . ." (Emphasis supplied.)

If the initial movement of three feet were followed, a person would be 660 feet *east* of the northwest corner of section 11. If that was all the description contained, a person could certainly have been misled. However, the remainder of the description clearly pointed out the error.

A point 660 feet *west* of the northwest corner of section 11 would be located in section three. The legal description involved here starts with the statement that all the land involved in the proposed annexation is in sections 11 and 2. Further, a point 660 feet west of the northwest corner of section 11 would require a movement of over 1,300 feet from the preceding reference point. The legal description clearly states a movement of three feet. There are other points too numerous to mention which clearly show that "west" was obviously "east" in this case. As far as counsel's sincerity is concerned (in his contention that he was misled by the erroneous description), he stipulated that all interested parties, including the town, had received a scale map which accurately reflected the area included in the proposed annexation. The scale map clearly showed that "West" should have been "East." Counsel for the town never raised any objection to the description, nor did he make any inquiry regarding the literal difference between the map and the legal description until he sprung his "surprise" at the trial.

The trial court's finding was sufficiently clear that it was not misleading to anyone. It is supported by the credible evidence.

### 2. *Rule of Reason.*

The town contends that the Banta annexation is a "shoestring" or "corridor" annexation. The town further points out that the state planning director made a finding that the annexation was not in the public interest.

The trial court made the following findings of fact:

"7. That the recommendation of the Department of Natural Resources against the annexation was duly considered by the [city of Menasha] Common Council and rejected.

"8. That the annexation is in the public interest.

" . . .

"11. The Court specifically finds that the City of Menasha did not act in an arbitrary, capricious or unreasonable manner as to constitute an abuse of discretion."

The annexation area involved here is contiguous to the city of Menasha for over 650 feet. The narrowest portion of the alleged "corridor" is approximately 840 feet wide.

The George Banta Company, Inc., sought the annexation so that the company could obtain services which it felt the town of Menasha could not provide.

We approve of the opinion of the trial court on this point.

"An example of an arbitrary and capricious attempt to annex lands is found in the case of Elmwood Park vs. Racine, 29 Wis. 2d 400. There, Elmwood Park, a village of 432 residents and comprising an area of 103.51 acres, undertook to annex the whole town of Mt. Pleasant consisting of an area of 35.64 square miles. The trial court found that Elmwood Park had no present need to annex any additional territory nor any imminent future need to do so. On appeal, the court said: 'Without a showing of some reasonable need, the proceeding, in legal parlance, is arbitrary and capricious, and contrary to the rule of reason.'

"In the case of Town of Fond du Lac vs. City of Fond du Lac, 22 Wis. 2d 533, the boundary line of the annexed area was drawn so as to create an island 300 by 130 feet, bounded on all sides by the territory of the city. The court held that this attempted exclusion of an island of land from the proposed annexation had to meet the test of reasonable justification. The court found that the exclusion of the island was to preclude the electors within the area from participating in the annexation proceedings and declared it arbitrary and capricious.

"In the case of Mt. Pleasant vs. Racine, 24 Wis. 2d 41, the Supreme Court applied the rule of reason to determine that an attempt to annex an area of land to the city which was contiguous to the city only by means of a corridor 1705 feet long and varying in width from 306 to 152 feet, did not meet the statutory requirement of contiguity.

"These few examples of court intervention indicate the type of situations that call for that action. That is not the situation we have presented here."

It is true that the state planning director found, as he did in the Schwarzbauer annexation, that the annexation was not in the public interest. Sec. 66.021 (11) (a), Stats., clearly shows that this finding is not binding on the municipality. The statutes only require that the "annexing municipality shall review such advice before final action is taken."

The trial court's findings that the annexation was in the public interest and that the annexation did not violate the rule of reason are not contrary to the great weight and clear preponderance of the evidence and the findings are affirmed.

### 3. Improper Economic Pressure.

The town argues that immediately after the Banta annexation the city built a bridge which led to the Banta Company's parking lot. Apparently the court is supposed to conclude that this bridge was "payment" for the annexation petition.

The only testimony regarding a bridge is from a director of the George Banta Company. He acknowledged that a bridge was built by the city of Menasha. The city's brief points out that the bridge was not in the annexation area, that it connected city streets, and that it replaced an earlier public bridge which had been condemned by the state. The allegations of the city's brief were not refuted by the town's reply brief.

The allegation of improper economic pressure is not supported by any credible evidence.

*By the Court.*—Judgments affirmed.