Theodore **PRIEBE**, Trustee of the Estate
of Giles Anthony Svehlek, Bankrupt,
Plaintiff,

v.

Dorothy **SVEHLEK**, Defendant.

No. 64–C–187.

United States District Court
E. D. Wisconsin.

Sept. 24, 1965.

Irvin B. Charne, Milwaukee, Wis., for plaintiff.

Samuel J. Schrinsky, Milwaukee, Wis., for defendant.

GRUBB, District Judge.

This action was commenced by the trustee of the estate of Giles Anthony Svehlek, bankrupt, under § 70 sub. (e) of

the Bankruptcy Act (11 U.S.C.A. 110 sub. (e) to set aside, as an alleged fraudulent conveyance under Chapter 242 of the Wisconsin Statutes, a conveyance of $10,000 made by the bankrupt to his wife, the defendant herein, on or about February 15, 1961.

Prior to February 1961, the bankrupt and the defendant were joint tenants in a piece of real estate which served as their homestead. In February 1961, the property was sold. As a result of the sale, the bankrupt received, after satisfying all encumbrances on the property, approximately $19,000. The bankrupt transferred $10,000 of this amount to the defendant. The nature of this transfer is a critical issue in this case.

It is the position of the plaintiff that the defendant made, without fair consideration, a conveyance of $10,000 which left him without sufficient funds to pay his debts as they matured, and was therefore fraudulent as to his creditors under the provisions of Chapter 242, Wisconsin Statutes. The defendant's position is that when the bankrupt purchased the property on February 18, 1958, he was solvent and at that time made a gift of one-half interest in the property by having the deed run to the bankrupt and the defendant as joint tenants, and that the conveyance of $10,000 to the defendant in 1961 represented her share, as joint tenant, in the real estate.

■ Transactions between husband and wife, such as the one here involved, should be closely scrutinized because of the unusual facilities for perpetrating fraud upon creditors. Rheingans v. Heppler, 243 Wis. 126, 9 N.W.2d 585 (1943).

Prior to 1958, the bankrupt had deposited money in two accounts at a savings and loan association. One account was denominated "Svehlek, Cheryl, by Giles Svehlek" (Cheryl Svehlek is the bankrupt's daughter), and the other account was denominated "Dorothy A. Svehlek by Giles Svehlek." The purpose of these accounts was to give security to the bankrupt's family in the event anything happened to him. Funds from these accounts were payable only to Giles Svehlek. During February 1958 and thereafter, funds were withdrawn from both of these accounts and used for the purchase of the real estate, costs arising in connection with the construction of a house on the property, and furniture for the home.

In March, the Svehleks borrowed $25,000 for expenses arising out of the construction of the house. They executed a $25,000 note on which they were jointly and severally liable.

In April 1958, the Svehleks signed a $40,000 note secured by a mortgage on the property, on which note they were jointly and severally liable. The $40,000 was used to pay off the $25,000 note and to pay contractors and materialmen.

Monthly mortgage payments of $320 were made by the bankrupt. When the home was occupied, the bankrupt gave the defendant a weekly allowance for the cost of running the home. On the trial, the defendant testified that none of her personal funds were used for the purchase of the land, the construction of the home, or mortgage payments. Mrs. Svehlek also testified that she felt she was entitled to the $10,000 because she worked so hard as a housewife and assisted her husband in his business.

The Wisconsin Supreme Court recently discussed the interests of joint tenants in the case of Jezo v. Jezo, 23 Wis. 2d 399, 406, 127 N.W.2d 246, 250 (1964), as follows:

> "The rule is, therefore, that the interests of joint tenants being equal during their lives, a presumption arises that upon dissolution of the joint tenancy during the lives of the cotenants, each is entitled to an equal share of the proceeds. This presumption is subject to rebuttal, however, and does not prevent proof from being introduced that the respective holdings and interests of the parties are unequal. The presumption may be rebutted by evidence showing the source of the actual cash outlay at the time of acquisition, the intent of the cotentant

creating the joint tenancy to make a gift of the half interest to the other cotenant, unequal contribution by way of money or services,[1] un-

"[1] In the case of a joint tenancy between husband and wife, however, the duties and services incidental to the marital relation are not properly considered in this respect."

equal expenditures in improving the property or freeing it from encumbrances and clouds, or other evidence raising inferences contrary to the idea of equal interest in the joint estate."

■ Considering the facts of this case in light of the principle expressed in the Jezo case, it is clear that the defendant did not have an interest in the property which would be sufficient consideration for $10,000. In this regard, it should be noted that the $10,000 is more than half of the $19,000 realized from the sale of the property.

■ The record in this case does not support the contention that a gift of one-half interest in the property was made in 1958 when the deed was executed to the defendant and her husband as joint tenants. The record does not demonstrate that the property was placed in joint tenancy for any reason other than mere convenience and in accordance with common practice.

The conveyance by the bankrupt of the $10,000 was one made without fair consideration. It is now necessary to decide whether the conveyance was one which left the bankrupt without sufficient funds to pay his debts as they matured.

In the latter part of 1960, the bankrupt decided to go into the restaurant business. As a result of this decision, he negotiated a lease of a building and personally guaranteed performance of the lease. He also entered into contracts for the purchase of equipment for the restaurant, which contracts were also guaranteed personally. The restaurant was operated for approximately three months before a gas explosion ended operations. At the time of the transfer of the $10,000, the total amount of these obligations from the restaurant, together with federal tax liabilities for 1958 and 1960, was approximately $55,000.

At the time of the transfer involved here, the assets of the bankrupt consisted of the equity in the home and stock in two corporations—Golden Chicken, Inc., and Golden Chicken Products, Inc. After the restaurant explosion and in February 1961, these two corporations had no income and paid no salary or dividends to the bankrupt. In March 1963, when the petition in bankruptcy was filed by the defendant, this stock was listed as worthless.

■ The conveyance of the $10,000 by the bankrupt to the defendant was one without fair consideration, which left the bankrupt without sufficient funds to pay his debts as they matured, and was fraudulent as to his creditors under Chapter 242, Wisconsin Statutes.

■ One issue raised by the pretrial order remains to be resolved: Is the matter of limitations governed by state law or the Bankruptcy Act? It is well established that an action by a trustee seeking recovery of property transferred in violation of state law is governed by applicable state limitations—in this case, six years. Stellwagen v. Clum, 245 U.S. 605, 38 S.Ct. 215, 62 L.Ed. 507 (1918); In re Di Pierro, 159 F.Supp. 497 (D.Me. 1958); Section 330.19, Wisconsin Statutes. See Hummel v. Equitable Life Assur. Soc., 151 F.2d 994 (7th Cir. 1945).

The foregoing shall constitute the Court's findings of fact and conclusions of law in accordance with Rule 52, Federal Rules of Civil Procedure.

For the foregoing reasons, the clerk is directed to enter judgment in favor of the plaintiff and against the defendant in the amount of $10,000.