RHEINGANS, Appellant, vs. HEPFLER and others, Respondents.

*April 14—May 18, 1943.*

For the appellant there was a brief by *Stafford & Stafford,* attorneys, and *Ingolf E. Rasmus* of counsel, all of Chippewa Falls, and oral argument by *Harold E. Stafford.*

For the respondents there was a brief by *P. J. Murphy* and *R. F. North,* both of Chippewa Falls, attorneys for John Hepfler and the United States Fidelity & Guaranty Company, and by *Ramsdell, King & Linderman* of Eau Claire, attorneys for the Fidelity & Casualty Company of New York, and oral argument by *Mr. George Y. King* and *Mr. North.*

MARTIN, J. Plaintiff and her husband have lived on a farm in the town of Tilden, Chippewa county, Wisconsin, ever since their marriage in 1911. On February 16, 1932, a deficiency judgment was rendered in the county court of Chippewa county in favor of Homer P. Hebert, Val W. Connell, and William N. Hebert, copartners, against Earl S. Barker and Walter Rheingans (Rheingans being the plaintiff's husband) in the sum of $634.60. On July 9, 1940, more than five years having elapsed since the entry of said judgment, the attorney for plaintiffs therein applied for and obtained an order from the court authorizing the issuance of execution. Execution was issued on January 16, 1941, which was returned unsatisfied.

On February 21, 1941, the judgment debtor, Rheingans, executed a bill of sale of his farm personalty to plaintiff,

Bertha Rheingans, his wife, to whom he was then indebted upon notes in the sum of $6,000 and accrued interest. The indebtedness to the wife is not disputed. On September 12, 1941, execution was again issued on the judgment, and delivered to the sheriff of Chippewa county on September 15, 1941. On October 13, 1941, defendant Fidelity & Casualty Company of New York executed an indemnity bond to the sheriff to indemnify him against actions and charges sustained or incurred in consequence of levy or seizure of personal property on the execution against the judgment debtor. The defendant United States Fidelity & Guaranty Company of Baltimore, Maryland, is the surety on the sheriff's official bond.

On November 7, 1941, defendant sheriff went to the Rheingans farm and there exhibited to the plaintiff and her husband the execution then in his hands. Instead of removing the property seized under the execution, the sheriff made a list of the personal property upon which he had levied, and took a receipt from the judgment debtor covering the property, in which receipt Rheingans agreed to hold the property for the sheriff. This levy was made within sixty days from the date of execution.

On November 10, 1941, notice of sale of the personal property on execution was given, fixing date of sale for December 4, 1941, at 2 p. m. The sheriff published the advertisements required by law. At the time and place fixed for the sale the sheriff called the sale, and adjourned it until the following day, there being no bidders present on December 4th. On December 5th the sheriff returned to the farm and made public announcement of the sale. The attorney for the judgment creditors made a bid of $1,050 in behalf of his clients. There being no further bids, the property was sold to the judgment creditors. The amount due on the execution as of date of sale was $1,058.19. The return of the sheriff on

execution sale was dated December 27th and filed with the clerk of the court, together with the execution, on December 29, 1941.

On September 12, 1941, the judgment debtor was examined before a court commissioner in supplementary proceedings. During the course of his examination he testified that he owned the milk cows and other personal property upon which levy had been made under the execution; that he had given his wife some notes for a debt he owed her; that he considered the notes as the security his wife had in the personal property. He was asked if he had given his wife a mortgage or notes and he answered, "just notes." He did not mention the bill of sale during the course of his examination. In April, 1942, plaintiff testified on an adverse party examination that she owned the stock as security for the money she had loaned her husband. She made no mention of the bill of sale during the course of her examination.

The farm and personal property were all assessed in the name of the husband as owner. The checks received from the creamery for milk sold were all made payable to Mr. Rheingans up to September 21, 1941 (nine days subsequent to his examination in the supplementary proceedings). Thereafter, the milk checks were made payable to Mrs. Rheingans. The assessment of all the property, real and personal, continued in the name of Mr. Rheingans subsequent to the execution of the bill of sale. No notice of transfer of title was ever given to the insurance company. There is no evidence that upon receipt of the bill of sale, or at any time thereafter, plaintiff canceled and surrendered to her husband the notes held by her. There was no change in the possession of the personal property, no relinquishment of ownership by the husband, or any claim of ownership by the wife other than as security for the money she had loaned her husband. Sec. 241.05, Stats., provides:

"Every sale made by a vendor, of goods and chattels in his possession or under his control, and every assignment of goods and chattels, unless the same be accompanied by an immediate delivery and followed by an actual and continued change of possession of the things sold or assigned, shall be presumed to be fraudulent and void as against the creditors of the vendor or the creditors of the person making such assignment or subsequent purchasers in good faith; and shall be conclusive evidence of fraud unless it shall be made to appear on the part of the persons claiming under such sale or assignment that the same was made in good faith and without any intent to defraud such creditors or purchasers."

It may be argued that it is difficult to make any visible change in the possession of personal property on a farm, such as is involved in this replevin action. While that is true, it becomes very important to ascertain the conduct of the parties to the transaction with reference to change in title. In the instant case, all visible signs point to the continued ownership of the property in Mr. Rheingans. It was assessed in his name, insured in his name, and the proceeds of the milk produced on the farm were paid by check to his order, until after his examination in the supplementary proceedings. In addition, the testimony of both husband and wife clearly shows that the bill of sale was intended merely as security.

Transactions between husband and wife, such as here involved, should be closely scrutinized because of the unusual facilities for perpetrating fraud upon creditors. *Dockry v. Isaacson,* 187 Wis. 649, 651, 205 N. W. 391. In *Osen v. Sherman,* 27 Wis. 501, which was an action against a sheriff for the recovery of personal property alleged to have been wrongfully taken and detained, at page 505 the court said:

"The portions of the general charge to which exceptions were taken, are to the effect that if, after the sale by Lang to the plaintiff, they held possession of the property conjointly, or if Lang continued in possession thereof as the agent of the

plaintiff, or if the plaintiff permitted Lang to remain in possession thereof and control the business, the presumption of fraud attached, and the burden was upon the plaintiff to remove such presumption by evidence. We think that the circuit judge stated the law in that behalf correctly to the jury; for how can it be said that there is an 'actual and continued change of possession' from the vendor to the purchaser of the thing sold, if such vendor still has dominion over it, either conjointly with the purchaser, or as his agent or the manager of his business?

"We find no error in the charge of the court."

In *Schneider v. Kraby*, 97 Wis. 519, 521, 73 N. W. 61, the action was for alleged wrongful conversion of personal property. It involved the validity of a chattel mortgage under which plaintiff claimed the property in controversy, referring to the statutory provision that "no mortgage of personal property shall be valid against any other person than the parties thereto, unless the possession of the mortgaged property be delivered to and retained by the mortgagee, or unless the mortgage or a copy thereof be filed as provided by law." As to the nature and extent of the possession required by the statute, the court said:

"It is well settled that such possession must be *actual, open, unequivocal, exclusive, and continuous.*"

The nature and extent of the possession mentioned in sec. 241.05, Stats., above quoted, must be of the same nature and extent as held in *Schneider v. Kraby, supra.*

The testimony of both husband and wife clearly establishes that the bill of sale was intended only as security for the debt due the wife. They both so testified repeatedly. Thus, the bill of sale must be treated as a chattel mortgage. The transfer was not valid as a chattel mortgage under sec. 241.08, Stats. So far as here material said section provides:

"No mortgage of personal property shall be valid against any other person than the parties thereto unless the possession

of the mortgaged property be delivered to and retained by the mortgagee or unless the mortgage or a copy thereof be filed as provided in section 241.10, except when otherwise directed in these statutes."

Under the rule in *Schneider v. Kraby, supra,* the possession required as the equivalent to the filing of the mortgage must be actual, open, unequivocal, exclusive, and continuous. To same effect see *C. I. T. Corp. v. Wallerman,* 242 Wis. 287, 7 N. W. (2d) 884, and cases cited. The rule is elementary that in replevin actions plaintiff has the burden to establish right to recover. In the instant action plaintiff has failed to prove her title, right to possession, or a wrongful taking and detention by defendant sheriff.

Appellant contends that the sheriff did not make a valid levy under the execution, that the sale thereunder was invalid, and that the separate taxation of costs of $100 as attorney fees was improper. Fees of attorneys for the sheriff and United States Fidelity & Guaranty Company were taxed in the sum of $100. Fees of attorney for Fidelity & Casualty Company were taxed in the sum of $100.

In view of the conclusions reached, we need only consider whether it was proper to tax separate attorney fees of $100. There was but the one cause of action. The interests of defendants were identical. There was no issue as between them. If plaintiff had recovered, she could have taxed the sum of $100, under sec. 271.04, Stats. The taxation of costs by a successful defendant is covered by sec. 271.03, Stats., which provides:

"(1) Costs shall be allowed of course to the defendant in the actions mentioned in section 271.01 unless the plaintiff be entitled to costs, but where there are several defendants not united in interest and making separate defenses by separate answers, and the plaintiff recovers against one or more but not all of such defendants, the court may award costs to such of the defendants as have judgment in their favor or to any of them.

"(2) If the defendant is entitled to costs he shall recover costs on the basis on which the plaintiff would have recovered if the demands of his complaint had been established."

The defendant sheriff and United States Fidelity & Guaranty Company appeared by their attorneys, P. J. Murphy and Roland F. North. The defendant Fidelity & Casualty Company of New York appeared by its attorneys, Ramsdell, King & Linderman. Separate answers were made. The situation is not like that in which there were separate and distinct causes of action which are consolidated for trial, as in *Hansberry v. Dunn,* 230 Wis. 626, 284 N. W. 556, and *DeKeyser v. Milwaukee Automobile Ins. Co.* 236 Wis. 419, 295 N. W. 755. The complaint demands judgment "against the defendants, and each of them, for the recovery of the possession of said property and damages for such unlawful taking and detention, or for the sum of $2,000 and interest thereon from the 10th day of November, 1941, being the value thereof, and the damages sustained by the plaintiff, together with her costs and disbursements." The recovery of costs is wholly dependent upon statutory provision. In a single action in which the interests of all defendants are identical, the fact that defendants appear and answer through separate attorneys, who participate in defense of the action, does not entitle the prevailing parties to separately tax attorney fees.

There being no evidence in the record to sustain the jury verdict in this case, the court properly set the verdict aside and dismissed the action. The judgment must be modified, limiting the taxable attorney fees to the sum of $100.

*By the Court.*—Judgment modified, limiting the taxable attorney fees to the sum of $100; and, as so modified, it is affirmed.