VILLAGE OF ELMWOOD PARK and another, Appellants, v. CITY OF RACINE and others, Respondents.

*December 1, 1965—January 4, 1966.*

402

404

For the appellants there was a brief by *William E. Dye* of Racine, for the village of Elmwood Park; and *Benson, Butchart & Haley* of Racine, for the town of Mt. Pleasant; and oral argument by *Mr. Dye* and *Mr. Emery B. Benson.*

For the respondents there was a brief by *Jack Harvey,* city attorney, and *Louis J. Roshar,* assistant city attorney, for the city of Racine, John R. Brown, and Evelyn M. Brown; and *Richard F. Foltz* of Racine, for the village of Sturtevant; and oral argument by *Mr. Harvey.*

BEILFUSS, J. The trial judge, Judge ELMER D. GOOD-LAND, filed a comprehensive, scholarly, and helpful memorandum opinion. He concluded that annexation and consolidation were separate and distinct statutory procedures intended to apply to dissimilar factual situations and that annexation was not intended by the legislature to encompass consolidation.

The dispute before us arises by virtue of conflicting interpretations of the consolidation and annexation statutes.

The legislature in its 1959 session made substantial changes in the statutory law governing the overall problem of municipal incorporation and urban expansion. A dominant change was a legislative recognition that many localities of the state were experiencing a substantial urban growth and that the existing legislation permitted haphazard, unrealistic, and competitive expansion without regard for present and probable future development in the best overall public interest. The consolidation statute, sec. 66.02, was amended to provide for a determination by the director of the planning function of the department of resource development as to whether the proposed consolidation would be in the public interest, subject to review by the circuit court. Sec. 66.021, Stats., the principal annexation statute, was amended to provide for substantially the same public-interest determinations.

The legislature, in the same 1959 session, enacted sec. 66.024, Stats., as a new alternative annexation statute without a public-interest determination requirement. An attempt was made to amend the section to provide for a similar public-interest determination; this proposed amendment passed one house of the legislature and lost in the other and therefore did not become a part of sec. 66.024.

The petition for annexation in this proceeding is under sec. 66.024, Stats.

The pertinent parts of the consolidation statute and the alternative annexation statutes are as follows:

Sec. 66.02 provides:

"CONSOLIDATION. Any town, village or city may be consolidated with a contiguous town, village or city, by ordinance, passed by a two-thirds vote of all the members of each board or council, fixing the terms of the consolidation and ratified by the electors at a referendum held in each municipality. The ballots shall bear the words, 'for consolidation,' and 'against consolidation,' and if a majority of the votes cast thereon in each municipality shall be for consolidation, the ordinances shall then be in effect and have the force of a contract. The ordinance and the result of the referendum shall be certified as provided in s. 66.018 (5) ; if a town the certification shall be preserved as provided in ss. 60.05 and 66.018 (5), respectively. Consolidation shall not affect the pre-existing rights or liabilities of any municipality and actions thereon may be commenced or completed as though no consolidation had been effected. Any consolidation ordinance proposing the consolidation of a town and another municipality shall, within 10 days after its adoption and prior to its submission to the voters for ratification at a referendum, be submitted to the circuit court and director of the planning function in the department of resource development for a determination whether such proposed consolidation is in the public interest. The circuit court shall determine whether the proposed ordinance meets the formal requirements of this section and shall then refer the matter to the director of the planning function in the department of resource development, who shall find as prescribed in s. 66.014 whether the proposed consolidation is in the public interest in accordance with the standards in s. 66.016. The director's findings shall have the same status as incorporation findings under ss. 66.014 to 66.019."

Sec. 66.024 provides:

"ANNEXATION BY REFERENDUM; COURT ORDER. As a complete alternative to any other annexation procedure, unincorporated territory which contains electors and is contiguous to a city or village may be annexed thereto in the manner hereafter provided. The definitions in s. 66.021 (1) shall apply to this section.

"(1) *Procedure for Annexation.* (a) The governing body of the city or village to which it is proposed to annex territory shall, by resolution adopted by two-thirds of the members-elect, declare its intention to apply to the circuit

court for an order for an annexation referendum, and shall publish the resolution once in a newspaper having general circulation in the area proposed to be annexed, and shall cause to be made a scale map of such territory showing it in relation to the annexing city or village. The resolution shall contain a description of the territory to be affected, sufficiently accurate to determine its location, the name of the municipalities directly affected and the name and post-office address of the municipal official causing the resolution to be published. The person who causes the resolution to be published shall serve a copy of the resolution together with the scale map upon the clerk of the town or towns from which the territory is to be detached within 5 days of the date of publication of the resolution. Such service may be either by personal service or by registered mail and if by registered mail an affidavit must be on file with the annexing body indicating the date said resolution was mailed. The annexation shall be deemed commenced upon publication of the resolution.

"(b) Application to the circuit court shall be by petition subscribed by the officers designated by the governing body, and shall have attached as a part thereof: the scale map, a certified copy of the resolution of the governing body and an affidavit of the publication and filing required under par. (a). Such petition shall be filed in the circuit court not less than 30 days but no more than 45 days after the publication of the notice of intention.

"(2) *Protest to Court by Electors; Hearing.* (a) If prior to the date set for hearing upon such application, there is filed with the court a petition signed by a majority of the electors residing in the territory or the owners of more than one-half of the real property in assessed value in such territory, protesting against the annexation of such territory, the court shall deny the application for an annexation referendum.

"(b) If a petition protesting the annexation is found insufficient the court shall proceed to hear all parties interested for or against the application. The court may in its discretion adjourn such hearing from time to time, direct a survey to be made and refer any question for examination and report thereon. Any town whose terri-

tory is involved in the proposed annexation shall, upon application, be a party and entitled to be heard on any matter pertaining thereto.

" . . .

"(4) *Referendum Election; When Ordered and Held.* (a) If the court, after such hearing, is satisfied as to the correctness of the description of the territory or any survey and that the provisions of this section have been complied with, it shall make an order so declaring and shall direct a referendum election within the territory which shall be described in the order, on the question, whether such area should be annexed. Such order shall direct 3 electors named therein residing in the town in which the territory proposed to be annexed lies, to perform the duties of inspectors of election."

The trial court concluded that there was a significant statutory distinction between consolidation and annexation as recognized by the court in several cases [1] and that the merging of territory as contemplated in this proceeding was not annexation but consolidation, and invalid because not in conformity with the consolidation statute.

We recognize that Elmwood Park and Mt. Pleasant could have proceeded under the consolidation statute (sec. 66.02) in their attempt to merge into one municipality. Because consolidation procedure was available to them it does not follow that the alternative, annexation, was not proper for the same purpose.

The introductory portion of sec. 66.024, Stats., is most unequivocal—"As a *complete alternative* to any other annexation procedure, unincorporated territory which contains electors and is contiguous to a city or village may

---

[1] *Milwaukee v. Sewerage Comm.* (1954), 268 Wis. 342, 67 N. W. (2d) 624; *Brown Deer v. Milwaukee* (1957), 2 Wis. (2d) 441, 86 N. W. (2d) 487; unpublished opinion of Hon. E. M. Duquaine, Circuit Judge for Brown county in *In re Annexation of Town of Preble to City of Green Bay* (1960).

be annexed thereto in the manner hereafter provided." (Emphasis added.)

The town of Mt. Pleasant is unincorporated; it does contain electors and is contiguous to the village of Elmwood Park. The statute contains no limitation as to size, nor does it prohibit annexation of an entire unincorporated area. We conclude that Elmwood Park could annex the entire town of Mt. Pleasant under sec. 66.024, Stats., if the proceeding otherwise complied with the statute and the case law dealing with annexation.

The trial court further concluded that if a sec. 66.024, Stats., annexation was a statutorily permissible proceeding that the common-law rule of reason applied and that under the facts as they appear in the record the proposed annexation was unreasonable and that the petition should be dismissed. We agree.

In support of this conclusion the trial court in its memorandum opinion stated:

" 'This court has authority to review the annexation of territory to a city or village and apply the test of reason.' *Town of Fond du Lac v. City of Fond du Lac*, 22 Wis. (2d) 533, 541 (1963) ; *Town of Mt. Pleasant v. City of Racine*, 24 Wis. (2d) 41, 45 (1964).

" 'In this state we apply a rule of reason.' *Town of Brookfield v. City of Brookfield*, 274 Wis. 638, 644 (1956).

"The rule of reason is firmly established in the Case Law of Wisconsin. See *Fenton v. Ryan*, 140 Wis. 253 (1909) ; *Incorporation of Village of Biron*, 146 Wis. 444 (1911) ; *Wilson v. Sheboygan*, 230 Wis. 483 (1939); *Greenfield v. Milwaukee*, 273 Wis. 484 (1956) ; *Town of Brookfield v. City of Brookfield*, 274 Wis. 638 (1956) ; *Town of Fond du Lac v. City of Fond du Lac*, 22 Wis. (2d) 533 (1963) ; *Town of Mt. Pleasant v. City of Racine*, 24 Wis. (2d) 41 (1964).

"In reaching a determination as to whether the proposed annexation meets the test of reason, the annexation in its entirety should be considered.

" 'And the question of reasonableness is one on the entirety of the attempted annexation, so that an annexa-

tion cannot necessarily be said to have had a reasonable basis merely because a sound reason may exist for taking in some particular part of the territory.' *City of Sugar Creek v. Standard Oil Company,* 163 F. (2d) 320, 324 (8 Cir. 1947).

"We are convinced Elmwood has no reasonable basis to annex Mount Pleasant. It is clear that there is no present need, or any reasonably expectable future needs, based upon the rate of growth of Elmwood, that would reasonably justify Elmwood annexing 35.64 square miles of territory, to-wit, the entire town of Mount Pleasant.

" 'As we appreciate the matter, the rule of reason with respect to the enlargement of boundaries of a municipal corporation, may be satisfied by the establishment of a number of factors, among which we note, by way of illustration, a substantial increase in population; a need for additional area for construction of homes, mercantile, manufacturing or industrial establishments; a need for additional land area to accommodate the present or reasonably anticipated future growth of the municipality; the extension of police, fire, sanitary protection or other municipal services to substantial numbers of residents of adjacent areas.' *Nix v. Village of Castor,* 116 So. (2d) 99, 101 (La. 1959).

"Furthermore, there is a complete lack of any 'overflow' growth of the village occurring beyond its boundaries.

" 'There is nothing to show any "overflow" from Olivette, residential or industrial. The selection of the site for this industrial development was made because of its independent advantages, and had nothing to do with the City of Olivette. And it is apparent that the very high land values existing in the area for industrial purposes have had nothing whatever to do with the proximity of Olivette. The present state of the "area" certainly does not represent an expansion or "actual growth" of Olivette.' *City of Olivette v. Graeler,* 369 SW (2d) 85, 93 (Mo. 1963).

"We concur with the following statement by counsel for the objectors, contained in their brief:

" 'The Village of Elmwood Park has no present need to annex any additional territory. Nor has it shown any imminent future need. Based upon its present size, character and past growth history it will have no need for

additional land for another ten to twenty years. Thus, any annexation by the village at this time is unreasonable, there being no reasonable need.'

"We are convinced that the proposed annexation serves no reasonably necessary municipal uses and purposes, that it violates the rule of reason, and is therefore null and void."

This court has applied the rule of reason to annexations after the 1959 amendments but not in a case involving sec. 66.024, Stats. *Town of Fond du Lac v. City of Fond du Lac* (1964), 22 Wis. (2d) 533, 126 N. W. (2d) 201; *Mt. Pleasant v. Racine* (1964), 24 Wis. (2d) 41, 127 N. W. (2d) 757.

Under the familiar rule of statutory construction, the legislature is presumed to know that the court does apply the rule of reason in annexation cases.

The fact that the legislature did not include a requirement for a determination of public interest in sec. 66.024, Stats., does not mean that the rule of reason does not apply to an annexation proceeding under this statute. While the standards for a public-interest determination set forth in secs. 66.02 and 66.021 are compatible with the rule of reason they are not contrary to nor antagonistic to the basis for the rule of reason. There is nothing in sec. 66.024 to indicate the legislature intended to abrogate the rule of reason. If the rule of reason was good law prior to the 1959 amendments and the court continued to apply it to sec. 66.021 after the amendment requiring such determination, there is no sufficient reason advanced to convince us that it should not apply to a statute (sec. 66.024) which by its literal letter does not specifically require a public-interest determination. Sec. 66.024 as it now stands is much the same, in this regard, as sec. 66.021 was at the time the court imposed the rule of reason.

The trial court found, and appellants do not dispute, that Elmwood Park had no reasonable basis to annex Mt. Pleasant, there being no present need or demonstrable

future need for that territory. Without a showing of some reasonable need, the proceeding, in legal parlance, is arbitrary and capricious, and contrary to the rule of reason. The petition for an annexation referendum must be dismissed.

*By the Court.*—Judgment affirmed.