GUSTIN, by Guardian *ad litem,* and another, Plaintiffs and Respondents, v. JOHANNES and another, Defendants and Appellants: RUFFALO and another, Defendants and Respondents.

*September 7—October 3, 1967.*

196

For the defendants-appellants there was a brief by *Peickert, Anderson, Fisher, Shannon & O'Brien* of Stevens Point, and oral argument by *Gerald M. O'Brien.*

For the plaintiffs-respondents there was a brief by *Frisch, Dudek, Banholzer & Slattery* of Milwaukee, attorneys, and *James J. Poole* of Wautoma of counsel, and oral argument by *Robert A. Slattery* and by *C. Michael Hausman* of Milwaukee.

For the defendants-respondents there was a brief and oral argument by *Arno J. Miller* of Portage.

WILKIE, J. Five issues are raised on these appeals:

1. Did the trial court err when it instructed the jury that defendant Johannes forfeited his right-of-way if

the jury found that he was traveling at an excessive rate of speed?

2. Does the evidence sustain the jury's finding that Johannes was 90 percent negligent?

3. Was it error to admit certain photographs into evidence?

4. Are the damages excessive?

5. Did the trial court err when it denied the taxing of certain costs to the plaintiffs?

*Jury Instructions.*

The liability issues which are raised on this appeal only affect the apportionment of negligence between the defendants, Johannes and Ruffalo. Neither party questions the jury finding that the plaintiff-passenger Gustin was free of negligence.

Johannes contends that the trial court erred when it instructed the jury that he forfeited his right-of-way if they found that he was driving at an excessive rate of speed. This instruction called into application the provisions of sec. 346.18 (1), Stats., which, in pertinent part, provides that:

". . . [W]hen 2 vehicles approach or enter an intersection at approximately the same time, the operator of the vehicle on the left shall yield the right of way to the vehicle on the right. The operator of any vehicle driving at an unlawful speed forfeits any right of way which he would otherwise have under this subsection."

The propriety of this instruction depends on whether or not the accident took place at an intersection within the meaning of this section. Johannes argues that Ruffalo's vehicle was not entering an intersection but was entering a highway from a "nonhighway access" and hence there could be no forfeiture of right-of-way because of speed. To support this hypothesis, Johannes contends that the triangular area divided this otherwise

T-type intersection into two separate intersections, one on each side of the triangle. (One intersection shown as CDEF on the map; the other, WXYZ.) Since Ruffalo's vehicle went across the triangular patch, Johannes seems to contend that the car was in a "no-man's land" between the two intersections and hence Ruffalo entered Beaver road from a "nonhighway access." The argument is made that if Ruffalo did enter from a "nonhighway access" the provisions of sec. 346.18 (4), Stats., would be applicable and he would have been required to yield the right-of-way and there could be no forfeiture of the right-of-way by Johannes due to excessive speed.

On the other hand, Ruffalo contends that this collision did take place at an intersection. He argues that the triangle merely created two forks in the road for the convenience of motorists but that the entire area between the outer boundaries of the forks (see CDYZ) was open to vehicular traffic and was, therefore, an intersection.

What constitutes an intersection was considered by this court in *Eberdt v. Muller,*[1] when the then applicable statutory definition of an intersection was construed. The statute read:

"INTERSECTION. The area embraced within the prolongation of the lateral curb lines or, if none, then within the lateral boundary lines of two or more highways which join one another at an angle, whether or not one such highway crosses the other." [2]

In applying this statutory language to the facts of that case involving a somewhat similar T intersection, this court, in *Eberdt,* literally interpreted the statute to mean that the limits of the intersection would follow a quadrilateral contour with substantially unequal sides. To avoid such absurd results, this court recommended that the statute be amended.

[1] (1942), 240 Wis. 341, 2 N. W. 2d 367, 3 N. W. 2d 763.
[2] Sec. 85.10 (22), Stats. 1941.

The statutory amendment which the court suggested in *Eberdt* was accomplished by enactment of our current sec. 340.01 (25), Stats., which states:

" 'Intersection' means the area embraced within the prolongation or connection of the curb lines or, if none, then within the boundary lines of the roadways of 2 or more highways which join one another at, or approximately at right angles, whether or not one such highway crosses the other, or the area within which vehicles traveling upon different highways joining at any other angle may come in conflict."

The Legislative Council Note, 1957,[3] on the statutory amendment indicates that the more flexible definition is an attempt to avoid the results reached in *Eberdt.*

Ruffalo's vehicle was well within the present statutory definition of an intersection. There were no curb lines at this rural intersection but the accident happened within the boundary lines of the two roadways involved. If Ruffalo had elected to take either fork and then cut back across Beaver road on an angle, he would have been exposed to a greater danger because his vehicle would have been on the surface of Beaver road for a longer period of time presuming that his speed remained constant.

## Apportionment of Negligence.

Johannes seeks a new trial on the issue of negligence, contending that the 90 percent–10 percent allocation found by the jury is grossly inaccurate in that there is no evidence to support such an apportionment. Johannes' main contention is that Ruffalo was negligent in failing to yield the right-of-way. We have already held this contention has no merit.

Johannes does not seriously quarrel with the fact that the jury could have found his speed to be excessive un-

---

[3] Wis. Anno. (1960), sec. 340.01 (25).

der the conditions. His only mitigating contention is that his speed of 30 miles per hour was less than the posted speed limit of 65 miles per hour. However, the fact that one is driving at a speed which is less than the statutory or ordinance limit does not necessarily mean that that person's speed is lawful.[4]

There is ample evidence to support the jury's apportionment of negligence in this case. Testimony established that Ruffalo stopped his vehicle before proceeding onto Beaver road, even though there was no stop sign at the intersection.

There is evidence which would support a jury's conclusion that Johannes was negligent as to both lookout and speed. Prior to the accident, Johannes' car was traveling through the dip in Beaver road and he could not see a vehicle at the intersection until he came over the crest of the hill. The distance from the crest of the hill to the intersection was not agreed upon. Johannes said it was 30 feet, Ruffalo said it was about 250 feet and Michael Gustin estimated it at about 150 to 200 feet. Unfortunately no one measured it. The members of the jury viewed the accident scene and probably were able to make their own estimate. Johannes testified that he did not see Ruffalo's truck until he was 10 to 20 feet away from it and presuming the crest was 150 feet from the intersection (the average of the estimates) this would mean that Johannes traveled approximately 130 feet without seeing the truck even though it was within his line of vision. The condition of Ruffalo's truck after impact (it was tipped over) indicates that Johannes' speed was considerably in excess of the 30 miles per hour to which he testified. However, under the circumstances, 30 miles per hour could have been too fast.

A jury's findings as to negligence apportionment will be sustained if there is any credible evidence which, un-

[4] *Drake v. Farmers Mut. Automobile Ins. Co.* (1963), 22 Wis. 2d 56, 63, 125 N. W. 2d 391, 128 N. W. 2d 41.

der any reasonable view, supports such findings.[5] This rule is especially true where, as here, the jury's findings have been approved by the trial court.[6]

We conclude that the jury's finding on apportionment must be sustained.

### Photographs in Evidence.

In *Neuenfeldt v. State* [7] this court said:

". . . It is discretionary with the trial court to admit photographs to aid the jury in securing a clear idea of a material situation when the photographs better show that situation than does the testimony of witnesses."

But where photographs are not substantially necessary or instructive to show material facts or conditions, and are of such a character as to arouse sympathy or indignation, or divert the minds of the jury to improper or irrelevant considerations, they should be excluded.[8]

The photographs in question are three 8 x 10 color pictures of the plaintiff taken by a professional photographer approximately eight months after the accident. The three pictures are "bust shots" of the plaintiff taken from the front, right side, and right front positions. The evidence is undisputed that the photographs present an accurate portrayal of the boy's condition after the laceration had healed.

Defendant Johannes argues that these photographs were not material and were introduced only to impassion and prejudice the jury. We do not agree. The trial judge, in ruling on the photographs' admissibility in chambers, noted: "I have no feeling there is anything involved in

[5] Rule recently reaffirmed in *Barber v. Oshkosh* (1967), 35 Wis. 2d 751, 754, 151 N. W. 2d 739, rehearing denied, September 11, 1967.

[6] *Cheetham v. Piggly Wiggly Madison Co.* (1964), 24 Wis. 2d 286, 290, 128 N. W. 2d 400.

[7] (1965), 29 Wis. 2d 20, 32, 138 N. W. 2d 252.

[8] *Selleck v. Janesville* (1899), 104 Wis. 570, 575, 80 N. W. 944.

these pictures that in any way could arouse the passions of the jury. They seem to me to be very innocuous, frankly." The receipt of the photographs was clearly within the trial court's discretion.

### Damages.

The jury awarded $10,000 to compensate Daniel Gustin for his personal injuries. Both defendants contend that this amount is excessive and that this court should invoke the *Powers* rule [9] and reduce the verdict to a reasonable amount.

Daniel Gustin was hospitalized for three days after the accident. Because of the severity of the head wound sustained and the possibility of brain damage, part of the repairing of the wound had to be performed without the benefit of an anesthetic, and the remainder under local anesthetic. The injury sustained was a laceration which started near the top of Daniel's head, continued to the hairline on the front of the head and then swung around back through the hair down across the right side of the head ending up about a half inch above the ear. A portion of the periosteum, or thin sheath of tissue which overlies the skull and performs the function of forming new bone, was lost.

Daniel Gustin returned to school two weeks after the accident. During the course of his convalescence a "slough" or ulcerated area where the tissue did not survive became apparent at the point where the wound extended into the right side of the boy's forehead outside the hairline. This area was surgically removed and sutured some seven weeks after the accident.

The principal residual from the accident is the 12-inch scar left by the laceration. There are periodic headaches relieved by aspirin.

[9] *Powers v. Allstate Ins. Co.* (1960), 10 Wis. 2d 78, 102 N. W. 2d 393.

On motions after verdict the trial court described the damage verdict of $10,000 as "very large" but "it doesn't disturb the Court's conscience." It was in a position, like the jury, to observe the scar. After making its review of the credible evidence supporting the award, the lower court refused to reduce the verdict.

We have reviewed the evidence and cannot say that the award of $10,000 is above the range of reasonably debatable amounts.[10]

To support defendants' claim of excessiveness of the damage verdict, Johannes cites the case of *Lundquist v. Western Casualty & Surety Co.*[11] *Lundquist* is not in point. In that case, the jury verdict was reduced from $14,000 to $10,000 only because of an erroneous instruction which allowed the jury to make an award for impaired earning capacity when no evidence had been introduced to warrant such an instruction. The case at bar is not one in which the verdict includes a sum for an item of damages which has not been proven.[12]

### Costs.

The last issue is raised by the respondents' cross appeal and concerns the question of whether the trial court improperly denied the plaintiffs' taxation of certain items of costs.

Respondents' first contention is that they should be allowed to tax $100 costs pursuant to sec. 271.04 (1), Stats., against each set of defendants, giving them a total of $400 allowable costs computed as follows:

---

[10] *Sulkowski v. Schaefer* (1966), 31 Wis. 2d 600, 607, 143 N. W. 2d 512. See also *Boodry v. Byrne* (1964), 22 Wis. 2d 585, 595, 596, 126 N. W. 2d 503.

[11] (1966), 30 Wis. 2d 159, 140 N. W. 2d 241.

[12] See *Gleason v. Gillihan* (1966), 32 Wis. 2d 50, 59, 145 N. W. 2d 90.

| | |
|---|---|
| Daniel Gustin v. Johannes and Insurer | $100.00 |
| Daniel Gustin v. Ruffalo and Insurer | 100.00 |
| Boyd Gustin v. Johannes and Insurer | 100.00 |
| Boyd Gustin v. Ruffalo and Insurer | 100.00 |
| Total | $400.00 |

In opposition to this computation, Ruffalo contends that the trial court was correct in limiting the plaintiffs' costs to $200 because each of the plaintiffs had only one cause of action against the defendants jointly. Because Ruffalo and Johannes were joint tort-feasors the plaintiffs did not have a separate right to recover against both; therefore, the allowable costs should be:

| | |
|---|---|
| Daniel Gustin v. Johannes and Insurer and Ruffalo and Insurer | $100.00 |
| Boyd Gustin v. Johannes and Insurer and Ruffalo and Insurer | 100.00 |
| Total | $200.00 |

Sec. 271.01 (1), Stats., provides that costs shall be allowed of course to the plaintiff upon a recovery. Sec. 271.04 (1) (a) provides that when the amount recovered is over $1,000 the costs shall be $100.

The costs issue in the recent case of *Schemenauer v. Travelers Indemnity Co.*[13] is very similar to that of the case at bar. The plaintiffs in *Schemenauer* were a husband and wife. The wife (Mrs. Schemenauer) was a passenger in an automobile driven by Anne Prefontaine which collided with an auto driven by Francis Coffey and then with one driven by Kuehl. Mrs. Schemenauer sued Prefontaine, Coffey, Kuehl, and their three respective insurance carriers for her injuries. Mrs. Schemenauer's husband also sued the three drivers and their respective insurers for medical expenses incurred and loss of society. The actions were consolidated. Though

[13] (1966), 34 Wis. 2d 299, 149 N. W. 2d 644.

this court reversed and granted a new trial, we answered the cost question to guide the parties during the retrial. The court held that the two plaintiffs were entitled to $600 costs between them, *i.e.*, each defendant and his insurer were to be treated as one defendant and one fee of $100 was to be allowed to each plaintiff against each defendant.[14]

*Schemenauer* is controlling in this situation and the plaintiffs are entitled to $400, each plaintiff taxing $100 attorneys' fees to each defendant driver (together with his insurer).

Respondents' second contention is that they should have been allowed to tax the court commissioner's fees of $72.99 incurred for taking depositions which were read into evidence at the trial.

The recovery of costs is wholly dependent upon statutory provisions.[15] Sec. 271.04 (2), Stats., lists the allowable disbursements, which list includes the costs of adverse examinations but does not include the costs of depositions. The statute is clear. The trial court did not err. That part of its order which denied this questioned fee must be affirmed.

*By the Court.*—Judgment affirmed; order modified as directed by the opinion and, as modified, affirmed.

[14] *Id.* at page 313.
[15] *Rheingans v. Hepfler* (1943), 243 Wis. 126, 134, 9 N. W. 2d 585.