In re application of City of Beloit for order for annexation referendum: CITY OF BELOIT, Appellant, v. TOWNS OF BELOIT and others, Respondents.*

*No. 236. Argued April 28, 1970.—Decided June 5, 1970.*
(Also reported in 177 N. W. 2d 361.)

* Motion for rehearing denied, with costs, on September 1, 1970.

For the appellant there were briefs by *Samuel B. Loizzo*, city attorney, and by *Orr, Isaksen, Werner, Lathrop & Heaney* of Madison, special attorneys, and oral argument by *Trayton L. Lathrop* and *Leon E. Isaksen*.

For the respondents there was a brief by *Garrigan, Keithley, O'Neal, Dobson, Elliott & DeLong* of Beloit, and by *Brady, Tyrrell, Cotter & Cutler* of Milwaukee, for the town of Beloit; and by *Caskey & Collins* of Beloit, for the town of Turtle; and by *Campbell, Brennan, Steil & Ryan* of Janesville, for the town of Rock, attorneys; and *Richard W. Cutler* and *Samuel J. Recht*, both of Milwaukee; *Roger D. O'Neal* and *David Y. Collins*, both of Beloit; *David J. MacDougall* of Janesville; and *Michael J. Spector* of Milwaukee, of counsel; and oral argument by *Richard W. Cutler*.

CONNOR T. HANSEN, J. The City of Beloit's proposed annexation covers the identical territory which was the subject of an ordinance adopted on February 6, 1967, and held invalid in *In re City of Beloit* (1968), 37 Wis. 2d 637, 155 N. W. 2d 633. The proposed annexation, now under consideration, is brought pursuant to sec. 66.024, Stats. Both this action and the annexation previously before this court are known as Caravilla Annexations, the name being derived from the initiator of the first pro-

ceeding, Caravilla, Inc., which owns a nursing home located in the proposed annexation area.

The illustration, prepared by this court from the various exhibits in the record, will help put this dispute in perspective. The Caravilla Nursing Home, located in the Town of Rock, is shown at the extreme north of the proposed annexation area. The power plant is in the Town of Beloit and is located northeast of the Rock river, also in the proposed annexation area.

Further background is provided by the following findings of the trial court:

"29. The territory proposed for annexation contains 2,694 acres of land (more than four square miles) and is populated by approximately 436 persons; 33 in the Town of Beloit, 40 in the Town of Turtle, 23 in the Town of Rock outside the Caravilla Nursing Home and approximately 340 in the Town of Rock inside the nursing home. The annexation extends about 2¼ miles north of the City's present northern boundary.

"30. The territory lies between the north boundary of the City of Beloit and the south boundary of the City of Janesville. . . .

"31. The power plant is located in the northeast corner of the Town of Beloit. The Town of Beloit's share of tax revenues from this plant was $253,550.00 in the year 1967, or approximately 16% of the Town of Beloit receipts from all sources and approximately 39% of the Town receipts from sources other than state, county and school tax levies, which levies merely pass through the Town treasury. This sum represents approximately 3% of the City of Beloit's receipts from all sources.

"32. The present proceeding is the fifth in a series of coordinated attempts (Project X) to annex lands (including the power plant) in the Town of Beloit. The City's initial attempt at annexation was a proceeding under section 66.024 of the statutes, published September 7, 1966, to annex approximately 13 square miles, including the centers of population in the Towns of Beloit and Turtle. This attempt was defeated in December, 1966, by the filing of protest petitions signed by approxi-

Hatched area: Caravilla Annexation.

Dark area: Present City limits of City of Beloit.

mately 2,606 electors comprising approximately 75 per cent of the electors residing in the territory sought to be annexed. During this time, September-October, 1966, a petition for annexation was drafted by the City (the Branigan annexation) omitting these centers of population from the territory sought to be annexed so that only 32 Town of Beloit and Town of Turtle electors resided in the new 2½ square mile annexation area. The power plant was still included in this annexation at the request of the City. The Branigan petitions were never signed by a sufficient number of electors and property owners. Then, in December, 1966, a new and third petition (Caravilla No. 1) was drafted still including the power plant at the suggestion of the City, but adding for the first time a half square mile of the Town of Rock which contained a nursing home inhabited by approximately 340 persons. This nursing home was more than two miles from the northernmost city limits of the City of Beloit. This third annexation was adopted by the City on February 6, 1967. Finally the City, in March, 1967, attempted again to annex the centers of population in the Towns of Beloit and Turtle by nine new 66.024 annexations, but these attempts were again defeated by protest petitions signed by the overwhelming majority of electors. On January 30, 1968, within hours of the Supreme Court's decision that the third annexation attempt (Caravilla No. 1) was invalid, the City adopted a resolution under section 66.024 setting forth its intention to initiate the present proceedings. The area selected by the City to be annexed was exactly the same as the area involved in the third annexation attempt. The five attempted annexations can be summarized as follows:

| "No. | Name | Date Started | Approximate Square Miles |
|------|------|-------------|------------|
| 1 | Community | September 7, 1966 | 13 |
| 2 | Branigan | September-October, 1966 | 2½ |
| 3 | Caravilla No. 1 | December, 1966 | 4 |
| 4 | 9 Annexations | March, 1967 | 7 |
| 5 | Caravilla No. 2 | January 30, 1968 | 4" |

*Rule of reason.*

In *Town of Brookfield v. City of Brookfield* (1957), 274 Wis. 638, 80 N. W. 2d 800, this court held that an annexation must be a reasonable one:

"The authorities in thickly settled areas are becoming more conscious of the necessity for reasonable plans for orderly suburban development. It is clear that the time has come to consider that as an element in reviewing annexation cases. In order to properly plan for the development of areas adjacent to a city it is now necessary to see that areas bordering the same are properly zoned and platted so that through streets may be provided for and so that slums will not develop along the borders of cities that will involve many problems and much expense in future development.

". . . On the motion for review we hold that questions involving the reasonable suitability and adaptability and the reasonable necessity for the proper growth, development, and welfare of a city are material and relevant in reviewing annexation proceedings." *Town of Brookfield v. City of Brookfield, supra,* pages 645, 646.

In *Town of Fond du Lac v. City of Fond du Lac* (1964), 22 Wis. 2d 533, 126 N. W. 2d 201, the boundary line of the annexed areas was drawn so as to create an island in the middle of the annexed territory and existing city limits. The rule of reason was applied and the annexation held invalid: "Creating an island within the city solely for the purpose of assuring the success of the annexation was an arbitrary and capricious action and an abuse of discretion and invalidates the annexation." *Town of Fond du Lac v. City of Fond du Lac, supra,* page 542.

The rule of reason was held applicable to an annexation proceeding under sec. 66.024, Stats., in *Elmwood Park v. Racine* (1966), 29 Wis. 2d 400, 139 N. W. 2d 66. In that case, this court concurred in the conclusion reached by the trial court that the annexation was violative of the rule of reason. The trial court's memorandum

decision was quoted wherein the following were noted as relevant in applying the rule of reason: (1) The annexation in its entirety should be considered; (2) increase in population and overflow in growth beyond the boundaries of a city; (3) need for additional area for construction of homes and industry to accommodate the present or reasonably anticipated future growth of a municipality; and (4) extension of police, fire, sanitary protection or other services to substantial numbers of residents of adjacent areas. In affirming, this court emphasized the requirement that a municipality demonstrate a present or future need for the territory.

"The trial court found, and appellants do not dispute, that Elmwood Park had no reasonable basis to annex Mt. Pleasant, there being no present need or demonstrable future need for that territory. Without a showing of some reasonable need, the proceeding, in legal parlance, is arbitrary and capricious, and contrary to the rule of reason. . . ." *Elmwood Park v. Racine, supra,* pages 412, 413.

In *In re City of Beloit, supra,* the procedures in sec. 66.021 (11) (b), Stats., were held unconstitutional. Respondents in that case (appellants in this one) urged that the definition of "public interest" in sec. 66.021 was a codification of the rule of reason. However, the broad definition of public interest was not applicable because sec. 66.021 confined that term to three factors: Government service, shape and homogeneity. Sec. 66.021 (11) (c). Nevertheless, judicial determination of public interest in sec. 66.021 (11) (b) was held not to be the same function as applying the rule of reason and, therefore, the statute was not saved from being unconstitutional: "The factors may be the same but their use and the court's function in respect to them are radically different." *In re City of Beloit, supra,* page 648. In reaching this conclusion, the differences between legislative and judicial power were discussed.

"There is no question that if we consider public interest as an unrestricted term or concept, as did the trial court, the determination of what political and economic expediency constitute public interest is a legislative function. What is 'desirable' or 'advisable' or 'ought to be' is a question of policy, not a question of fact. What is 'necessary' or what is 'in the best interest' is not a fact and its determination by the judiciary is an exercise of legislative power when each involves political considerations and reasons why there should or should not be an annexation. This is the general and universal rule which sharply draws the differentiating line between legislative power and judicial power and by which the validity of the delegation of functions to the judiciary by the legislature is determined. *State ex rel. Klise v. Riverdale* (1953), 244 Iowa 423, 57 N. W. 2d 63; *Auburndale v. Adams Packing Asso.* (Fla. 1965), 171 So. 2d 161; *Ruland v. Augusta* (1926), 120 Kan. 42, 242 Pac. 456; *St. Joseph v. Hankinson* (Mo. 1958), 312 S. W. 2d 4; Annot. (1930), 69 A. L. R. 266, 267, 268." *In re City of Beloit, supra,* pages 644, 645.

The last case in which this court discussed the rule of reason was *Town of Menasha v. City of Menasha* (1969), 42 Wis. 2d 719, 168 N. W. 2d 161, where this court held the trial court's findings that the annexation did not violate the rule of reason was "not contrary to the great weight and clear preponderance of the evidence." *Town of Menasha v. City of Menasha, supra,* page 739.

It is not the function of courts to express an opinion as to the wisdom of annexation, rather, their role is to determine, as a question of fact, whether there are any facts or circumstances which justify the action taken by the city. This, in essence, is the difference between the rule of reason—an exercise of judicial power—and a finding that an annexation is in the public interest— a legislative function.

"This court has discussed the thin line between a proper and improper delegation of legislative authority on other occasions.

" ' . . . Does the law before us go into operation upon the happening of a certain state of facts to be determined by the circuit court, or does it authorize and require the court to go further, and not only determine facts, but pass its judgment upon questions of legislative discretion? If the first branch of this question can be answered in the affirmative and the latter branch in the negative, then the law must be sustained, because the ascertainment and determination of questions of fact is clearly an exercise of purely judicial power. If, on the other hand, the latter branch of the question must be answered in the affirmative, then the law cannot be sustained, because such power cannot be delegated to the circuit court under our constitution.' *In re Incorporation of Village of North Milwaukee* (1896), 93 Wis. 616, 622, 67 N. W. 1033. *See also, Scharping v. Johnson* (1966), 32 Wis. 2d 383, 145 N. W. 2d 691." *In re City of Fond du Lac* (1969), 42 Wis. 2d 323, 329, 330, 166 N. W. 2d 225.

The question before the trial court in this case was whether the respondents had overcome the presumed validity of the ordinance and proved the proposed annexation arbitrary and capricious. Based on the cases discussed, this required a showing that there was no reasonable need for the annexation. If appellant has shown *any* such reasonable need for annexation, further discussion of necessity requires weighing these facts and determining what is in the best interest of the parties. This is not a judicial function. *In re City of Beloit, supra.* However, in this case the trial court found *no* facts evincing a need for appellant to acquire the proposed territory:

"65. The City has no present nor reasonably foreseeable future need for any additional land and particularly the land in the present proposed annexation."

The trial court also found that the shape and boundaries were designed and fixed arbitrarily and capriciously, solely to assure its success.

"48. *The dominant reason for the shape of the present proposed annexation was to achieve an annexation*

*which included the power plant and a sufficient number of electors in favor of the annexation to overcome the opposition of a majority of the electors residing in the territory but outside the nursing home and thereby to assure its success.* Absent the resident electors of Caravilla, the present annexation would have been defeated by the protest petitions signed by a majority of electors residing outside the home. (Stipulation, June 11, 1968, par. 2.)

"49. *The shape and boundaries of the present proposed annexation were designed and fixed arbitrarily and capriciously, solely to assure its success.*

"50. The proposed annexation will create crazy quilt boundaries which will be difficult and inefficient for both the City and Towns to administer, and will result in a haphazard, unrealistic expansion without regard for present and future development in the best overall public interest."

The question, therefore, before this court is whether findings of the trial court are contrary to the great weight and clear preponderance of the evidence. *Town of Menasha v. City of Menasha, supra.*

One factor upon which a reasonable need for annexation can be based is the growth of a city and the overflow of population into adjoining areas. The trial court made the following findings with respect to the appellant's need for additional land:

"61. The present boundaries of the City contain sufficient vacant land to accommodate all of the City's projected growth to 1980. The population of the City on January 1, 1968, was 38,937. The City's projected population in 1980 is a maximum of 51,300. Thus, the City can expect an increase in population between now and 1980 of 12,363 people. At the present time the City contains at least 1,500 acres of vacant land zoned for residential use most of which has already been provided with public utilities at public expense. Using the density recommendation of 110 acres per 1,000 population (2,600 acres needed for 25,000 population . . .) it appears that the 1,500 acres of vacant residential land presently in the

City would accommodate over 13,500 people and is more than enough to accommodate the expected 12,000 people.

"62. On the basis of actual construction in the City between 1962 and 1968, an average of 142 dwelling units per year, and again using the plan recommendation of three dwelling units per acre (7,800 dwelling units for 2,600 acres of land) it would appear that the City has approximately a 30-year supply of vacant residential land $(142 \div 3 = 47, 1500 \div 47 = 31.9 +)$.

"63. With respect to commercial and industrial land, the City presently contains approximately 625 acres of vacant land zoned for such use. Using the standards of either the Urban Land Institute (2.4 acres per 1,000 population for commercial, 12 acres per 1,000 for industrial) or the S. E. W. R. P. C. (4.6 acres per 1,000 population for commercial, 4.3 acres per 1,000 population for industrial), it would appear that 625 acres are more than sufficient to accommodate the City's expected growth of 12,000 people.

"64. Because of three annexations, commenced subsequently to the present attempt, which have now become effective, the City's boundaries have been expanded by more than 1,200 acres of vacant land. This makes a total of more than 3,400 acres of vacant land presently in the City—over 5½ square miles. The addition of the area proposed for annexation in the present case would increase this to 6,100 acres—approximately 10 square miles of undeveloped land. This would be sufficient to accommodate growth for more than 50,000 persons (6100 × 3 units per acre × 3 persons per unit). No such growth in the City of Beloit will probably occur within the reasonably foreseeable future."

Appellant contends there is a population overflow "which, with the City of Beloit will reach 100,000 in 1985." In making this ascertion, appellant directs this court's attention to the *Comprehensive Community Plan for Beloit, Wisconsin.* However, that study shows the 100,000 population figure is for the "greater Beloit Area" and that the growth of the City of Beloit is below the national average:

"During the Census period of 1950–1960 the population of the greater Beloit Area increased from 46,014

to 56,360 persons, or 22.5 percent. This is a considerably greater rate of increase than the population growth of Wisconsin and Illinois combined (15.5 percent) and of the nation (19.0 percent). In this period, the City of Beloit, alone, grew from 29,590 to 32,846 persons, an increase of 11.0 percent, but by 1962 the population had increased substantially to 35,131 persons—primarily as a result of annexation."

The same report states that most residential development will occur outside the city limits but this will be balanced in part by a new trend toward multiple-family apartment development within some parts of the city. The report also states that "[a]lthough manufacturing employment will continue to grow in the Beloit Area it is likely that most new industrial development will occur south of the state line; . . ."

Appellant also contends the trial court's findings with respect to the need for additional land is not supported by the evidence, and alleges: (a) Evidence offered did not include multiple-family dwelling permits; (b) failure to take into account the many nonresidential uses found in residential zoning; (c) building permits issued outside of the city were not specified, the needs of the whole community must be considered, the drain to the suburban towns is not reflected; (d) the failure to consider the modest development recommended for lands east of the Interstate where there is a rock problem; (e) needs of existing population for additional space for living, industry and commerce were ignored; and (f) the fact that much residentially zoned area is of small, cut-up parcels, difficult to develop.

Appellant has challenged the figures of respondent and the findings of the trial court but has not substantiated its position by citing any evidence by which this court can now hold these findings contrary to the great weight and clear preponderance of the evidence. Respondents had the burden to come forward with evidence

which would show there was no reasonable basis for the annexation. This was done by establishing the figures relied on by the trial court in the findings of fact. The trial court found that there was sufficient vacant residential land available for approximately, a thirty-year supply. This did not take into consideration annexation which became effective after this action was commenced which expanded the boundaries of the City of Beloit by more than 1,200 additional acres. This reinforces the conclusion of the trial court that appellant "has no present nor reasonably foreseeable future need for any additional land. . . ."

The trial court found that the proposed annexation area, aside from the Caravilla Nursing Home was not presently in need of city sanitary sewer services and that the installation of such services either at the present time or in the foreseeable future would not be economically feasible. It cannot be said that such findings are against the great weight and clear preponderance of the evidence.

Appellant asserts that vast residential areas surrounding the City of Beloit are unsewered and that "[a]reas located near a river are polluting unless they are connected to a central system." This is a general statement based on the testimony of Mr. Herbert E. Johnson, a civil and sanitary engineer. However, Mr. Johnson also testified that he was not familiar with the existence of any particular pollution problem north of Philhower Road (most of the proposed annexation territory is north of this road) other than that various employees of the City of Beloit had told him there was a need for sanitary sewers in the area.

In its brief, appellant discusses the relative expenses involved in providing sewer services to the proposed annexation area and how it can more economically provide those services in comparison to respondents. However, the relative merits of who should provide such services and which party—appellant or respondents—is in a bet-

ter position to install sewer facilities, is not the issue in applying the rule of reason. Indeed, if such a finding were made, courts would be making a legislative determination of what is in the best interest of the parties.

The trial court found that the Caravilla Nursing Home, located at the far north end of the annexation area, was the only situation which called for added sewer service. The city engineer for appellant testified that if he were given the requisite legal authority, he would extend sewer service only as far north as Bayliss Avenue, a point five miles short of the Caravilla Nursing Home. There was, therefore, no showing of any need for appellant to annex the territory in question so as to provide that land with sewer facilities.

Appellant relies upon the testimony of Robert E. Tilley, a member of the Beloit city council who stated it was absolutely necessary for the City of Beloit to expand its boundaries in as many directions as possible to enable the city to develop and plan for future growth, for long-range planning of beltline highway systems and sewer systems; enable the city to offer new job opportunities by the location of new plants and industry; and to adequately perform the job of councilmen in representing constituents. In this connection, Mr. Walter K. Johnson, former Wisconsin State Director of Planning, testified that, in his opinion, it was in the long-term interest of a municipality to annex lands as they become available in order to have them for planning for future development. In addition, appellant claims it is in a better position to provide for the growth and development of lands than respondents. This may be true, but it does not alter the requirement that appellant, in this particular appeal, demonstrate a present or foreseeable future need for annexation of these lands. A determination of what is convenient or what is best for the area is not a judicial function. Annexation procedures are strictly statutory, *Mt. Pleasant v. Racine* (1965), 28 Wis. 2d 519, 526, 137

N. W. 2d 656, and judicial review governed by the rule of reason. Until such time as the legislature deems it advisable to do otherwise, the rule of reason will continue to be applied in situations such as this action where both parties are of the opinion they stand in a better position to provide the kind and quality of services potentially required. Thus, given the procedures in sec. 66.024, Stats., some demonstrable need must be shown, or the annexation is of necessity arbitrary and capricious. *Elmwood Park v. Racine, supra.* Showing that territory sought for annexation is merely desirable, better than the land already controlled, or that a particular city will be best able to provide services for an area does not satisfy the rule of reason.

The finding of the trial court with respect to other municipal services has not been challenged on this appeal:

"52. The evidence with regard to other municipal services—police, fire, zoning—likewise shows that, while the City *could* provide such services to the area proposed for annexation, the area is adequately served by the Towns and is not in need of such City services."

There having been no need shown for this annexation, it follows that the shape and boundaries were designed solely to assure its success and therefore the annexation is arbitrary and capricious.

*Award of disbursements.*

Sec. 66.024 (3), Stats., provides:

**"Annexation by referendum; court order. . . .**
"(3) DISMISSAL. If for any reason the proceedings are dismissed, the court may, in its discretion, order entry of judgment against the city or village for such disbursements or any part thereof as have been incurred by the parties opposing the annexation."

Pursuant to this statute the trial court awarded "disbursements" totaling $30,080.53. The Town of Rock requested allowance of $2,492.93 of which $2,387.50 was attorney's fees; the Town of Turtle requested $1,998.10, of which $1,959.80 was attorney's fees; and the Town of Beloit requested $45,971.18, of which $39,607 was attorney's fees. Pursuant to sec. 66.024 (3), Stats., the Town of Beloit was awarded $25,589.50; the Town of Rock, $2,492.93; and the Town of Turtle, $1,998.10.

Appellant objects to the award for disbursements including an award of attorney's fees since sec. 66.024 (3), Stats., does not specifically provide for such fees. On the other hand, respondents contend there is no limitation in this statute as there is for example in sec. 66.014 (3) (b):

"**Procedure for incorporation of villages and cities.** . . .
"(3) HEARING; COSTS. . . .
"(b) The court may in its discretion by order allow costs and disbursements as provided for actions in circuit court in any proceeding under this subsection."

Thus, respondents argue it was within the discretion of the trial court to include attorney's fees in the award of disbursements under sec. 66.024 (3).

The award of costs is wholly dependent upon statutory provision. *Rheingans v. Hepfler* (1943), 243 Wis. 126, 134, 9 N. W. 2d 585; *Gustin v. Johannes* (1967), 36 Wis. 2d 195, 153 N. W. 2d 70. Attorney's fees are not recognized as recoverable unless authorized by statute or contract, except when natural and proximate result of a wrongful act by defendant has involved plaintiff in litigation with other parties. *Widemshek v. Fale* (1962), 17 Wis. 2d 337, 117 N. W. 2d 275. The general cost statute, sec. 271.04 breaks down costs into two items: Fees, sec. 271.04 (1) ; and disbursements, sec. 271.04 (2), and in the statute referred to by respondents (sec. 66.014) the legislature used the terms "costs and disbursements."

There are statutes which specifically allow a court to award attorney's fees; [1] however, sec. 66.024 (3), Stats., does not so provide and our attention has not been directed to any authority, nor can we find any such authority, in which the term "disbursement" has been used in such a way as to indicate attorney's fees were included. We, therefore, conclude that if the legislature had intended to allow the award of attorney's fees, it would have done so in specific terms. Absent any statutory direction, actual disbursements, excluding attorney's fees, shall be allowed pursuant to sec. 66.024 (3), in such amount as the trial court determines to be reasonable. The award of disbursements, including attorney's fees, is reversed and remanded.

*By the Court.*—Judgment affirmed in part; and reversed in part and remanded for further proceedings consistent with this opinion. On appeal, costs awarded to respondents.

WILKIE, J. (*dissenting*). I respectfully disagree. I would reverse. The trial court entered very extensive findings of fact in this case. The majority of the court state that on appeal these findings will not be overturned by this court unless they are against the great weight and clear preponderance of the evidence. Insofar as these findings are of adjudicative facts, I agree that this is the standard of review to be used. However, insofar as these findings by the trial court concern matters of legislative choice, then that court, as well as this court on review, must examine the record to ascertain whether the legislative choice is without rational basis. [1]

---

[1] *See for example:* sec. 103.56 (5), Stats. (Employment Regulations, *Injunctions.*) Sec. 247.23 (Actions affecting marriage.)

---

[1] *See Clark Oil & Refining Corp. v. Tomah* (1966), 30 Wis. 2d 547, 141 N. W. 2d 299, citing *South Carolina Highway Dept. v. Barnwell Brothers* (1938), 303 U. S. 177, 191, 58 Sup. Ct. 510, 82 L. Ed. 734.

These findings are, in my opinion, matters of legislative choice. In the prior *City of Beloit Case* we said:

". . . What is 'desirable' or 'advisable' or 'ought to be' is a question of policy, not a question of fact. What is 'necessary' or what is 'in the best interest' is not a fact and its determination by the judiciary is an exercise of legislative power when each involves political considerations and reasons why there should or should not be an annexation. . . ." [2]

The trial court here itself recognized the difficulty in making judicial determinations of matters largely within the sphere of legislative choice when it said:

"Now it isn't for me to say what the annexation law of this state should be, but I will say this into the record that this trial has convinced me that a problem of this kind should not be solved by courts. The issues in this case so far as they pertain to the sufficiency of the petitions, the question of whether or not any or either of the parties technically followed the procedural statutes involved, certainly those are good legal questions. But when you start having a judge decide whether or not a proposed annexation includes land which is reasonably useful and adaptable to the uses and needs of the city of Beloit or any other city you are asking that judge to make not a judicial determination but a political and a legislative determination and one in which I find it very difficult to apply legal rules. Some other body should do this, not courts."

Nevertheless, here the trial court specifically found that the city has no present nor reasonably foreseeable future need for any additional land. The majority affirm this finding as not being against the great weight and clear preponderance of the evidence. [3]

---

[2] *In re City of Beloit* (1968), 37 Wis. 2d 637, 644, 155 N. W. 2d 633. *See also: In re Incorporation of Village of North Milwaukee* (1896), 93 Wis. 616, 67 N. W. 1033.

[3] *See Town of Menasha v. City of Menasha* (1969), 42 Wis. 2d 719, 168 N. W. 2d 161.

It would seem to be almost impossible to distinguish between a determination of what is *necessary* as being an exercise of legislative power and not a factual determination, and a determination of *no reasonable need* which, according to the majority, is a factual determination not to be overturned on review unless against the great weight and clear preponderance of the evidence. This is a matter of legislative choice and, therefore, the trial court's and this court's function is merely to check into the facts to see if there is any rational basis. I would find that there is a rational basis and thus confirm the annexation.

If this analysis is rejected and the application of the so-called rule of reason is insisted upon, I would limit its effectiveness to annexations which are so outrageous and outlandish as to be clearly unreasonable and arbitrary and capricious.[4] In determining this, this court should be free to apply, on its own, the rule of reason to determine the reasonableness of the proposed annexation.[5] A determination by a trial court that a proposed annexation does or does not violate the rule of reason is, in my opinion, a conclusion of law by that court. In such a situation this court is free to accept or reject such conclusion irrespective of any standard ostensibly limiting our scope of review. In other words, this court can make its own conclusions of law from the adjudicative facts as found by the trial court which are not against the great weight and clear preponderance of the evidence.

The proposed annexation here does not violate the rule of reason. It is not a shoestring,[6] hole in the dough-

[4] *See Town of Fond du Lac v. City of Fond du Lac* (1964), 22 Wis. 2d 533, 126 N. W. 2d 201.

[5] *Cf. Town of Brookfield v. City of Brookfield* (1957), 274 Wis. 638, 80 N. W. 2d 800.

[6] *Mt. Pleasant v. Racine* (1964), 24 Wis. 2d 41, 127 N. W. 2d 757.

nut,[7] or the wholly unneeded attempted annexation of a big, largely undeveloped community to a tiny one.[8] It is not arbitrary or capricious.[9] Thus, the annexation should not be voided.

I am authorized to state that Mr. Justice HEFFERNAN joins in this dissent.

---

[7] *Town of Fond du Lac v. City of Fond du Lac, supra,* footnote 4.

[8] *Elmwood Park v. Racine* (1966), 29 Wis. 2d 400, 139 N. W. 2d 66.

[9] *Town of Brookfield v. City of Brookfield, supra,* footnote 5.